[Civ. No. 8996.   Third Dist.   May 9, 1957.]

JACK LEWIS et al., Respondents, v. LOUIS FOPPIANO
et al., Appellants.

Francis Passalacqua, Spurr & Brunner and W. N. Brunner for Appellants.

Kasch & Cook and Leo M. Cook for Respondents.

PEEK, J.—Defendants appeal from a judgment in favor of plaintiffs based upon an exclusive listing agreement under which the defendant Foppiano listed with the plaintiff Lewis, a real estate broker, certain timber land owned by him. Defendants' demurrer was sustained as to certain causes of action set forth in plaintiffs' complaint, and the case proceeded to trial on the remaining four counts: (1) That the expiration date of the contract had been waived by Foppiano; (2) that the same was modified by the inclusion of the plaintiff Burnette as a party thereto; (3) that Foppiano was indebted to plaintiffs for services, work and labor in the sum of $5,000; and (4) that the Green Valley Lumber Company, a copartnership, was liable for any commission found to be due upon the ground that by reason of a particular clause in the contract of purchase between Green Valley and Foppiano, the former had agreed to pay any commission found to be due on the sale. Although numerous contentions are made by defendants, their primary argument is essentially an attack upon the sufficiency of the evidence to support the finding that there was a waiver of the termination date of the listing agreement. Secondly, it is argued that the judgment in favor of the plaintiff Burnette was erroneous in that he was not a proper party plaintiff, and lastly that no cause of action was established against Green Valley.

The facts show that on September 6, 1952, Foppiano and Lewis entered into a written brokerage contract whereby Lewis was given the exclusive right to sell, for a price of $5.00 per thousand feet, timber belonging to Foppiano on or before January 1, 1953. According to the last cruise made, there was an estimated 21 million feet which at the stated price would amount to $105,000. Shortly thereafter, Lewis and Burnette orally agreed that if a sale was consummated with any prospect obtained by Burnette the commission would be equally divided between them. This arrangement was communicated to Foppiano who evidenced his agreement therewith. Early in January the original brokerage contract was

extended by a written amendment for a period of 90 days, or until April 1, 1953. On several occasions subsequent to that date Lewis talked with Foppiano regarding the sale of the timber, and Foppiano instructed him to continue his efforts to sell it. Similar instructions were given to Burnette. Foppiano himself testified that he knew Burnette was continuing his efforts to sell the timber. On May 6, 1953, Burnette showed the property to Garner Smith, the general manager of Green Valley Lumber Company, and to one Hoyt, an employee thereof. Apparently Hoyt contemplated purchasing the timber and reselling it to the partnership. Two or three days later Burnette again showed the property to them. Following the second showing, Smith informed Burnette that if Hoyt did not buy the timber the partnership would. Thereafter Burnette telephoned Foppiano requesting him to arrange a meeting, and later that month Hoyt, Smith and another partner, one Hipsley, met with Foppiano to discuss Hoyt's possible purchase of the timber. It then developed that Hoyt was unable to make the down payment on the purchase price, and Smith informed Burnette that the partnership would purchase the property as soon as it was able to obtain the money to do so. On July 16, 1953, Foppiano and the partnership executed a written contract by which the latter agreed to purchase the timber for the sum of $100,000. Assuming Green Valley was thereby obligated to pay a commission of 5 per cent, the sales price would be identical with that set out in the listing agreement between Foppiano and Lewis. The agreement provided in part as follows: "The buyers covenant that they have dealt directly with the sellers in regard to the subject of this contract, and not through any agents. Should any agent establish by a Court of Competent Jurisdiction of his or its right to a Commission for the sale of said timber, such commission shall be paid for by the buyers."

It is apparent from the evidence as summarized that it was amply sufficient to support the finding that Foppiano had waived the termination date of the contract. Here as in *Baker* v. *Curtis*, 105 Cal.App.2d 663, 669-670 [234 P.2d 153], ". . . the owner, after the time limit provided in the contract had expired, urged and encouraged the broker to continue his efforts to find a purchaser for the property, and the broker did so continue with the knowledge, approval and encouragement of the owner, and, as a result of the broker's efforts, a purchaser to whom the owner sold the property was produced, under such circumstances the time limit in the written con-

tract must be considered as having been waived and the broker is entitled to his commission. To hold otherwise would in our opinion permit the use of the statute of frauds to perpetrate a fraud. Such a holding would not only be inequitable, but is not required or justified by either reason or authority.''

Although we have concluded that the judgment in favor of Lewis and against the defendant Foppiano must be sustained, such is not the case as to the plaintiff Burnette.

The evidence as regards Burnette's connection with the transaction discloses testimony by him that he did not claim a commission by reason of an agreement with Foppiano, but only because of his arrangement with Lewis. Plaintiffs' argument that all parties knew that Burnette was acting for Lewis and that by joining Burnette as a party Lewis showed he was willing to share his commission, ''so what concern is it of either defendant,'' is not too persuasive. It follows that the judgment in favor of Burnette and against Foppiano, being wholly devoid of any evidence to sustain it, must be reversed.

We also agree with defendants in their final contention that plaintiffs' complaint was insufficient to sustain a cause of action against Green Valley, and hence their demurrer should have been sustained. The only basis for the judgment against said defendant is the particular provision previously quoted from the contract between it and Foppiano. We find nothing therein to warrant such a conclusion which from plaintiffs' argument appears to be predicated upon the third party beneficiary rule. (Civ. Code, § 1559.) From the plain language of the contract any obligation on the part of Green Valley to pay a broker's commission could only arise after the same had been established ''by a Court of Competent Jurisdiction.''

But even if we assume that Lewis is a beneficiary for whose benefit the contract was entered into, the complaint failed to allege performance of the contract provision that required him to establish by a court of competent jurisdiction his right to a commission. An allegation that a party has performed a condition precedent imposed upon him is an essential part of his cause of action. (*Caspar Lumber Co.* v. *Stowell,* 37 Cal.App.2d 58, 61 [98 P.2d 744]; Civ. Code, §§ 1436 and 1439.) Here, to the contrary, the complaint shows that such condition had not been performed, nor could Lewis truthfully so allege.

That portion of the judgment against Green Valley, and that portion of the judgment in favor of Burnette are reversed. The remaining portion of the judgment in favor of the plaintiff Lewis against the defendant Foppiano is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.