Richard C. HENSCHEL and Mildred L.
Henschel, Appellants,

v.

HAWKEYE–SECURITY INSURANCE
COMPANY, Appellee.

No. 53857.

Supreme Court of Iowa.

June 23, 1970.

Daniel P. Ernst, of Gilloon, Klauer, Stapleton & Ernst, Dubuque, for appellants.

Leo A. McCarthy, of Reynolds, Kenline, Roedell, Breitbach & McCarthy, Dubuque, for appellee.

MASON, Justice.

Richard C. and Mildred L. Henschel instituted this law action for damages resulting from an alleged breach of a comprehensive personal liability insurance contract issued to them by defendant Hawkeye-Security Insurance Company. Trial to the court resulted in dismissal of plaintiffs' petition at their costs based on a finding plaintiffs failed to give the insurance company timely notice of loss.

Plaintiffs appeal, assigning one error relied on for reversal challenging the sufficiency of the evidence to support this finding. Our review is not de novo but only on errors assigned. Rule 334, Rules of Civil Procedure.

The policy involved was issued through defendant's Dubuque agent, Lange's Insurance Agency, for the contract period commencing November 28, 1959, to November 28, 1962. It provides in part:

"I. Coverage L—Personal Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, and the company shall defend any suit against the insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this endorsement, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient."

An insured is defined as follows:

"III. Definition of Insured. The unqualified word 'insured' includes (a) the named insured and (b) if residents of his household, his spouse, the relatives of either, and any other person under the age of twenty-one in the care of an insured. * * *."

It further required as policy conditions:

"3. Notice of Occurrence—Coverages L and M. When an occurrence takes place written notice shall be given by or on behalf of the insured to the company or any of its authorized agents *as soon as practicable.* * * *.

"4. Notice of Claim or Suit—Coverage L. If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative" (Emphasis supplied).

Under Coverage P the company agreed to pay, at the request of the named insured, for loss of property of others caused by an insured. "Loss" is defined as meaning damage or destruction, but not including disappearance, abstraction or loss of use.

The insured's duties when loss occurs under Coverage P are set forth in Condition 6:

"6. Insured's Duties When Loss Occurs —Coverage P. When loss occurs, the insured shall give written notice *as soon as practicable* to the company or any of its authorized agents, file sworn proof of loss with the company within ninety-one days after the occurrence of loss, exhibit the damaged property, if within his control, and cooperate with the company in all matters pertaining to the loss or claims with respect thereto" (Emphasis supplied).

Actions against the company are allowed for in Condition 7 in these words:

"7. Action Against Company—Coverages M and P. No action shall lie against the company unless, *as a condition precedent thereto,* there shall have been full compliance with all the terms of this endorsement, nor until thirty days after the required proofs of claim have been

filed with the company" (Emphasis supplied).

The policy excluded "(c) under coverages L and M, * * * bodily injury or property damage caused intentionally by or at the direction of the insured".

The incident giving rise to this suit occurred September 24, 1961, when plaintiffs' 15-year-old son, Mark, was alleged to have intentionally set fire to a semitrailer truck in Dubuque, destroying its cargo. September 18, 1963, National Fire Insurance Company, who had paid the loss occasioned by the fire, filed suit against Mark as sole defendant for damages, alleging his acts were the sole and proximate cause of the loss sustained. The Henschels made no demand on Hawkeye to afford a defense to that action. May 6, 1965, it was dismissed for lack of prosecution.

September 15, 1966, National Fire Insurance Company, joined by Terminal Warehouse and Storage, Inc., filed another action seeking damages resulting from this fire. In Division I plaintiffs again sought to recover from Mark on an intentional tort theory. In Division II they proceeded for the first time against Richard C. and Mildred L. Henschel, whom they had joined as defendants, on the theory that as parents they were negligent in failing to restrain Mark when they knew or should have known he would commit such as intentional tort.

October 7 the Henschels made written demand that Hawkeye defend them in this negligence action under the terms of its comprehensive liability policy.

Defendant refused to defend the action and perform under its contract of insurance on the grounds the incident was an intentional tort excluded from coverage under the policy and plaintiffs had not given timely notice of loss as required by the policy.

After Hawkeye's refusal plaintiffs retained counsel to defend the negligence ac-tion. Settlement was reached when plaintiffs paid an agreed figure.

They then brought this action alleging coverage under a comprehensive personal liability policy issued by defendant was in force on September 24, 1961, and because of defendant's refusal to comply with its insurance contract they incurred expenditures of $615.25 in settlement, $16.50 for court costs and $323.96 as fees for National's attorney. During trial plaintiffs amended their petition by adding a claim for $318.57 as fees for their present attorney, making a total demand as amended of $1274.28.

Answering plaintiffs' petition defendant admitted plaintiffs were insured on September 24, 1961, under a policy issued by it. It asserted as an affirmative defense that Mark was a resident of plaintiffs' household on September 24, 1961, and was an insured pursuant to the terms of the insurance contract; as an insured he intentionally caused the property damage to the truck cargo by setting fire to it; coverage is specifically excluded to property damage caused intentionally by or at the direction of an insured.

As another affirmative defense Hawkeye alleged plaintiffs first gave oral notice of the fire loss on or about September 16, 1966, nearly five years after the loss and under the conditions of the policy issued to plaintiffs they were required to give defendant or its authorized agent written notice of said occurrence as soon as practicable; the giving of said notice was a condition precedent to its liability.

In reply plaintiffs admitted they first gave Hawkeye and its agent oral notice of the fire loss on or about September 16, 1966.

I. Defendant's motion, made at the close of plaintiffs' evidence and renewed at the close of all evidence, based on the contentions insured failed to prove due and timely notice of the September 24, 1961, loss or legal justification or excuse for the delay,

and that the loss was occasioned by an intentional tort, was overruled.

However, in its judgment entry dismissing plaintiffs' petition the trial court stated as a finding of fact plaintiffs' notice of loss to defendant was not timely, a ground urged in defendant's motion to dismiss, as previously noted.

This procedural situation requires some comment.

■ Since a motion to dismiss made during trial in an action tried to the court is equivalent to a motion for directed verdict if there had been a jury, Brown v. Schmitz, 237 Iowa 418, 420, 22 N.W.2d 340, 341, it is incumbent on the trial court to review the evidence in a light most favorable to plaintiffs, making all reasonable inferences in their favor. LaFontaine v. Developers & Builders, Inc., Iowa, 156 N.W.2d 651, 655; Jackson v. Brown, 164 N.W.2d 824, 826 (Iowa 1969); 89 C.J.S. Trial § 595, pages 396–397. Necessity of the trial court viewing the evidence in such a light explains its overruling of defendant's earlier motions to dismiss.

■ Not until after submission, sitting as a trier of fact—as a jury—to determine a case on its merits did the court by findings of fact, conclusions of law and judgment entry determine plaintiffs' action should be dismissed for failure of timely notice. At this latter stage the court was not required to view the evidence in a light most favorable to plaintiff but only to weigh the evidence and determine the credibility of the witnesses. Re Claim of Gwynne v. Vance, 258 Iowa 875, 879, 140 N.W.2d 917, 919; Schmitt v. Jenkins Truck Lines, Inc., 170 N.W.2d 632, 643 (Iowa 1969).

II. We next determine whether the trial court's dismissal because of plaintiffs' failure to file a timely notice of loss was a finding of fact or a ruling as a matter of law.

■ Ordinarily, the sustaining of a motion to dismiss at the close of plaintiffs' evidence or all the evidence is a ruling as a matter of law whereas a dismissal by a court sitting as the jury is a finding of fact. Davis v. Knight, 239 Iowa 1338, 1352–1353, 35 N.W.2d 23, 31. Only if we see the trial court's ultimate dismissal as a belated response to defendant's motion could we view his ruling as a dismissal as a matter of law. We choose not to do this for the following reasons.

Our discussion in Division I concerning the viewing of evidence lends support to a determination that the trial court was sitting as a trier of fact deciding the case on its merits by a finding of fact when it dismissed plaintiffs' cause of action. Further, this court's past pronouncements support such a conclusion. In Davis v. Knight, supra; Batliner v. Sallee, 254 Iowa 561, 562–564, 118 N.W.2d 552, 553–554; and Sparks v. City of Pella, 258 Iowa 187, 189, 137 N.W.2d 909, 910, defendant's motion to dismiss or direct a verdict at the close of plaintiff's evidence was overruled, but his motion to dismiss or direct a verdict at the close of all of the evidence was not ruled on, thereby creating some uncertainty as to the substance of the trial court's determination when it later dismissed plaintiff's cause of action. This court held in all three cases the submission of a reserved ruling with the case and subsequent dismissal by the trial court in its findings of fact and conclusions of law was a finding of fact, not a ruling as a matter of law. As is apparent, this court could have easily concluded in the above cases the trial court's ultimate dismissal was a belated response to defendant's motion at the close of all the evidence yet, we held dismissal was a finding of fact.

■ Since here defendant's motion to dismiss at the close of all the evidence had been ruled on, it would be impossible to view the trial court's dismissal as belated response to defendant's motion. We therefore interpret the trial court's dismissal

of plaintiffs' action for failure to file the timely notice of loss as a finding of fact. As stated in Batliner v. Sallee, supra, 254 Iowa at 564, 118 N.W.2d at 554:

"If the trial court had been ruling only on the motion to dismiss, there would have been no occasion for a * * * finding of fact and conclusion of law. All the evidence was in and the matter ready for the court's final decision. The trial court obviously did more than sustain the motion to dismiss."

III. In our review on errors assigned, the findings of fact by the trial court have the effect of a special verdict and are equivalent to a jury verdict. If supported by substantial evidence and justified as a matter of law, the judgment will not be disturbed on appeal. Rule 344(f)(1), R.C.P. Stated in other words, in a law action tried to the court its findings of fact having adequate evidentiary support shall not be set aside unless induced by an erroneous view of law. It follows, the rule does not preclude inquiry into the question whether, conceding the truth of a finding of fact, the trial court applied erroneous rules of law which materially affect the decision. Alsco Iowa, Inc. v. Jackson, 254 Iowa 837, 840, 118 N.W.2d 565, 567; France v. Benter, 256 Iowa 534, 536, 128 N.W.2d 268, 270. We may also interfere when such findings are undisputed or no conflicting inferences may be drawn from them.

Further, we must construe the evidence in the light most favorable to the trial court's judgment, and this court will not weigh the evidence or pass on the credibility of the witnesses. Shirk Oil Company v. Linsley, 166 N.W.2d 789, 790 (Iowa 1969); Griffith v. Red Oak Community School District, 167 N.W.2d 166, 172 (Iowa 1969).

It is also true that findings of a trial court are to be broadly and liberally construed, rather than narrowly or technically. In case of doubt or ambiguity, findings will be construed to uphold, rather than defeat, the judgment. Schnabel v. Vaughn, 258 Iowa 839, 845, 140 N.W.2d 168, 172; Grall v. Meyer, 173 N.W.2d 61, 63 (Iowa 1969).

IV. In considering whether notice of loss made a condition precedent to liability under an insurance contract was timely, we have held in interpreting similar policy provisions the phrase "as soon as practicable" means "within a reasonable time in light of the circumstances". Leytem v. Fireman's Fund Indemnity Co., 249 Iowa 524, 526–527, 85 N.W.2d 921, 922, and citations.

"As soon as practicable" does not mean that every trivial accident should be reported, but only those which an ordinarily prudent individual acting reasonably would consider under all the circumstances as consequential and which furnish such individual reasonable ground to believe at the time he was legally responsible for the incident and a claim for damages would arise against him. This is so even though it may later prove to be a serious injury. Leytem v. Fireman's Fund Indemnity Co., 249 Iowa at 527, 85 N.W.2d at 923; Estate of Linderholm v. State Auto. & Cas. Under., 169 N.W.2d 561, 564 (Iowa 1969).

We have also held where an insurance policy provides insured shall give notice and furnish proofs of loss within a reasonable time, and this is made a condition precedent to the right to bring an action on the policy, no recovery can be had thereon unless some legal justification or excuse for the delay appears. Once an unexcused delay has been found and not waived, prejudice to the insurer is presumed. Although rebuttable unless this presumption is overcome by satisfactory showing of lack of prejudice by the insured, it will defeat his recovery. Only when insured has satisfactorily shown excuse or legal justification such as reasonable mistake or trivial occurrence, does the burden to show actual prejudice fall upon the defendant insurer and then it becomes an element in the question of substantial

compliance. Henderson v. Hawkeye-Security Ins. Co., 252 Iowa 97, 103, 106–107, 106 N.W.2d 86, 90–92; Western Mutual Ins. Co. v. Baldwin, 258 Iowa 460, 472, 137 N.W.2d 918, 925; Estate of Linderholm v. State Auto. & Cas. Under., 169 N.W.2d 561, 564 (Iowa 1969), and citations in these opinions.

■ Ordinarily, the question of whether a notice has been reasonably given is one of fact for the jury or, as in this case, the court sitting as a trier of fact rather than one of law. Estate of Linderholm v. State Auto. & Cas. Under., supra.

An examination of the record reveals substantial evidence of a delay, as indicated earlier, it being almost five years from the date of loss until the insurer was notified. Some of the more common explanations offered as excuses for delay are insured's ignorance of the accident or injury, his belief he was not liable for the accident, his belief there would be no claim because of the trivial nature of the occurrence or his belief the accident or injury was not covered by the policy. See Annot., 18 A.L.R.2d 443, 470, 478; Leytem v. Fireman's Fund Indemnity Co., and Estate of Linderholm v. State Auto. & Cas. Under., both supra.

Inherent in the trial court's finding of lack of timely notice is its conclusion none of these legal justifications or excuses for such delay were established. In arriving at this conclusion, the trial court held in effect plaintiffs, acting as ordinarily prudent individuals under the circumstances, had reasonable grounds to believe at the time they were legally responsible for the cargo loss and that a claim for damages against them as parents would arise; their assumption of nonresponsibility was not reasonable support for legal justification or excuse for the delay.

In support of their contention there was not substantial evidence in the record to support the finding that notice of loss to defendant was not timely, plaintiffs argue their assumption they were not responsible for the incident was reasonable and did establish justification or excuse for delay. However, neither they nor defendant raise or argue the question or burden of proof which in our opinion is a basic problem involved in determination of this assignment of error.

Plaintiffs point to the fact Henschel first learned of the fire involving Mark from the juvenile authorities in October 1961. Before then plaintiffs had had no difficulties with Mark or any knowledge of tendencies on his part to set fires or engage in other destructive activities. In fact, Mark had won an award for a fire prevention slogan. Henschel testified he consulted various attorneys, none of whom advised him of any potential liability as a parent. When the first lawsuit was filed against Mark there was no threat to the Henschel personal finances or any other kind of security and it had not occurred to Henschel there was a possibility of him and his wife becoming liable by nature of that lawsuit. Since his son was a minor and had no assets, Henschel felt there was no problem. He believed he was no more involved than if his son had robbed a bank. Any suit claiming damages would be against Mark, not his parents.

Only three witnesses were called, the plaintiffs and Theodore Ellsworth, the Lange agent through whom the Henschels purchased the policy involved.

Ellsworth detailed the facts surrounding the sale of the policy, its later cancellation and the substance of a communication received from plaintiffs' attorney after the 1966 lawsuit was filed. He had no recollection of receiving any notice of loss before September 15, 1966. It is fair to say there is nothing in his testimony bearing on the reasonableness of plaintiffs' assumption of nonresponsibility.

A review of Mildred Henschel's testimony fails to reveal any evidence relevant to prove the proposition in issue.

In addition to the portion of Mr. Henschel's testimony previously set out, there

is the fact that when first advised his son was implicated, Henschel sought the advice of his own attorney who suggested he consult the attorney appointed by the court as guardian ad litem for Mark in the juvenile hearing. After visiting with this attorney and in view of the fact Mark was a minor with no assets, Henschel then concluded there would be no problem. He denied having knowledge he and his wife would be involved with any future claim for damages before being served as defendants with an original notice in September 1966. He conceded he knew if he had an accident he would be sued and that is why he had insurance.

Most of Richard Henschel's cross-examination concerned his familiarity with comprehensive liability contracts and the fact Mark was an additional insured under the policy. However, when questioned about the juvenile hearing growing out of the fire incident, he maintained there was nothing about the hearing which enlightened him that he and his wife could be exposed to some liability growing out of the incident. Although he had been advised by the insurance agent that the contract involved covered minor children in his home, including Mark, Henschel said he wasn't thinking about insurance at the time of the juvenile hearing.

There can be do doubt the foregoing evidence is sufficient to generate a question for the trier of fact. But this is not the problem if plaintiffs have the burden of proof on the issue.

In addition to the matters previously noted, plaintiffs alleged in paragraph .10 of their petition they had duly complied with all the conditions of the insurance contract to be performed on their part. Rule 98, R.C.P., provides in part:

*"Permissible Conclusions; Denials Thereof.* * * * [P]erformance of conditions precedent * * * may be pleaded as legal conclusions, without averring the facts comprising them. It shall not be sufficient to deny such averments in terms

contradicting it, but the facts relied on must be stated."

▪ The "conditions precedent" referred to are those the performance or occurrence of which are prerequisite to a claim on which relief can be granted. Treasure State Industries, Inc. v. Leigland, 151 Mont. 288, 295–296, 443 P.2d 22, 26, where the court was interpreting its rule 9(c) which is taken verbatim from the federal rules.

▪ Our rule 98, R.C.P., is also based primarily on federal rule 9(c) and simply permits the allegation of performance to be general rather than detailed—a departure from the common law requirement that performance of each condition precedent must be alleged in detail. The rule was designed to eliminate the laborious and largely unnecessary averments resulting under the common law procedure. For a history and purpose of federal rule 9(c), see 5 Wright and Miller, Federal Practice and Procedure: Civil section 1302.

▪ For pleading purposes, at least, a condition precedent is one whose performance or occurrence plaintiff must prove in order to recover. Jennison v. Aacher, 201 Pa.Super. 583, 586, 193 A.2d 769, 772. Henschels were therefore obliged to allege compliance with conditions precedent or to assert performance or occurrence of the conditions was waived or excused in order to state the essentials of a cause of action. To the extent we are aware, this court has never previously stated the rule in so many words. The following authorities support it: Lewis v. Foppiano, 150 Cal.App.2d 752, 754–756, 310 P.2d 658, 660–661; Amos v. Triangle Motor Co., 94 Colo. 435, 436–437, 30 P.2d 1109, 1110; Florida State Hospital Etc. v. Durham Iron Co., 194 Ga. 350, 354, 21 S.E.2d 216, 219; Carlton v. Smith, 285 Ill.App. 380, 382–383, 2 N.E.2d 116, 117; Hibbs v. City of Wichita, 176 Kan. 529, 534–535, 271 P.2d 791, 796; Streib v. Local Lodge No. 27 of I. B. of Boiler Makers, Etc., (Mo.

App), 40 S.W.2d 519, 521; Binzel v. Viehmann, 111 Mont. 6, 10, 106 P.2d 187, 189; Barron v. Cain, 216 N.C. 282, 283, 4 S.E.2d 618, 619; 41 Am.Jur., Pleading, section 89; 1 Am.Jur.2d, Actions, section 80; 71 C.J.S. Pleading § 80; 3A Corbin on Contracts, section 749; and 5 Williston on Contracts, Third Ed., (Jaeger), section 674.

This is obvious, for otherwise the conditions agreed to between the parties would be nullified, a new contract would be made for them by the court and defendant's obligation and plaintiff's right would have accrued without reference to the express terms of the agreement.

 A general denial in a responsive pleading will not put in issue the question of performance or occurrence of a condition precedent. Briney v. Tri-State Mutual Etc. Ins. Co., 254 Iowa 673, 677–678, 117 N.W.2d 889, 891–892. However, defendant in answer alleged in paragraph 3 plaintiffs failed to give timely notice of loss which was made a condition precedent to liability to defend by the policy provisions, thus stating a fact relied on by defendant and effectively putting in issue plaintiffs' performance. Rule 98 which permitted plaintiffs to allege generally their performance of the conditions precedent also required defendant to specifically plead those facts relied on if it elected to controvert this allegation.

 The question is whether in this stage of the pleadings this apportionment of the pleading burden made by rule 98 shifts from plaintiffs the burden of proving performance of conditions precedent or excuse or justification for delay in giving notice of loss. In this connection we use the phrase "burden of proof" to express the idea that a named litigant must in the end establish a given proposition in order to succeed. Wilson v. Findley, 223 Iowa 1281, 1299–1300, 275 N.W. 47, 56–57; 9 Wigmore on Evidence, Third Ed., sections 2385–2387; 31A C.J.S. Evidence § 103.

If the burden to establish excuse or justification for delay in performing this condition precedent remains with plaintiffs, in order to hold for them, we would be required to find that they had established such issue as a matter of law. In the absence of an admission by the adverse party, it is not often that a party having the burden of proof upon an issue establishes it as a matter of law. Naxera v. Wathan, 159 N.W.2d 513, 521 (Iowa 1968), and citations.

On the other hand, if defendant has the burden of establishing nonperformance of a condition precedent to liability or lack of excuse or justification for delay, it would be fairly simple under this record to hold for plaintiffs, since the insurance company offered no evidence bearing on the issue of legal justification or excuse for the delay.

2 Iowa Rules of Civ.Proc., rule 98, has this comment:

" * * * In most instances no question is raised about the performance of conditions precedent, and Rule 9(c) thus puts the burden on defendant to raise such an issue where there is actually a question. This does not shift the burden of proof however. Where defendant does make the necessary specific denial of performance or occurrence, the burden is on plaintiff to show that performance or occurrence took place. Holley Coal Co. v. Globe Indemnity Co., C.A. 4th, 1950, 186 F.2d 291."

 Where in order to state a cause of action it is essential that plaintiffs allege certain ultimate facts or permissible conclusions, then ordinarily the burden of proving those facts or permissible conclusions is on them. Rule 98 has the effect of forcing defendant to raise the issue whenever he believes there actually is a question about performance. "This distribution of the pleading burden does not affect or shift the burden of proving performance or occurrence, which generally will be on plaintiff as to any condition challenged by defendant." 5 Wright and Miller Federal Practice and Procedure: Civil section 1304.

3A. Corbin on Contracts, section 749, has this statement:

"* * * [I]f a fact is a condition precedent to defendant's duty of immediate performance, the burden of proving it should be on plaintiff. * * *.

"The performance of all conditions precedent must ordinarily be affirmatively alleged by the plaintiff and affirmatively proved by him. It has frequently been held, however, and there are some statutes that expressly so provide, that it is sufficient for the plaintiff, in his declaration, to make a general and blanket allegation of performance of all conditions precedent. Such a rule as this does not change the burden of proof; it merely relieves the plaintiff of the necessity of listing all possible conditions precedent and alleging their occurrence. * * *."

In commenting on the change in pleading requisites brought about by rules similar in language to our rule 98, the author of Williston on Contracts, Third Ed., (Jaeger), in volume 5, section 674, says:

"Under later systems of pleading, the plaintiff need merely make a general allegation of the performance or happening of conditions, and the defendant must indicate what, if any, breaches of conditions he relies upon as an excuse for non-performance. This does not change the ultimate burden of proof which remains upon the plaintiff. [Citing authorities].

"'As to all conditions precedent the plaintiff sustains the burden of proof. Because of the practical inconvenience of compelling proof of all the conditions precedent in a policy of insurance, the plaintiff under our rule may, upon proof of his interest, the issuance of the policy to him, the loss, and compliance with the proofs of loss, rest upon the legal presumption that these conditions are prima facie established and the case made out. Thereupon the defendant may offer its proof of the several breaches which it may have pleaded, and these the plaintiff may in turn rebut. This burden of proof never shifts. Upon the whole evidence it is where it was at the beginning, upon the plaintiff, to prove his compliance with the terms and conditions precedent of the policy.'"

This quotation is from Benanti v. Delaware Ins. Co., 86 Conn. 15, 18, 84 A. 109, 110, which cites in support Hennessy v. Metropolitan Life Ins. Co., 74 Conn. 699, 52 A. 490; Vincent v. Mutual Reserve Fund Life Ass'n, 77 Conn. 281, 287, 58 A. 963. Among other authorities cited by the author in support of this statement are Soukup v. Halmel, 357 Ill. 576, 577–579, 192 N.E. 557, 558; Topinka v. Minnesota Mut. Life Ins. Co., 189 Minn. 75, 77–79, 248 N.W. 660, 661–663, 95 A.L.R. 739; and Rushing v. Commercial Casualty Ins. Co., 251 N.Y. 302, 304–305, 167 N.E. 450, 451.

A similar rule is stated in 29 Am.Jur.2d, Evidence, section 140, in this way:

"* * * Where the contract contains a condition precedent, the plaintiff must assume the burden of proof as to the happening of the condition upon which liability of the other party to the contract depends; such burden is his throughout the trial." Authorities cited in support of this statement are collected in footnote 20.

In line with these authorities we hold where a party in order to state a good cause of action is required to allege he has performed all the conditions of the contract to be performed on his part, an allegation in the responsive pleading setting forth facts relied on to disprove performance imposes on him the burden of proving substantial performance of conditions precedent, which includes, of course, excuse or justification for delay which would otherwise be unreasonable. This burden was not shifted by rule 98 which required defendant to allege facts upon which it challenged plaintiffs' performance. The burden of establishing the positive was on plaintiffs.

This requirement of rule 344(f) 5, R.C.P., does not aid plaintiffs' position:

"Ordinarily the burden of proof follows the pleading; that is, he who pleads and relies upon the affirmative of an issue must carry the burden of proving it."

Defendant's allegation questioning plaintiffs' performance that plaintiffs failed to give timely notice of loss which was made a condition precedent to its liability to defend was simply compliance with rule 98 that "it shall not be sufficient to deny such averment [that plaintiffs had performed all conditions to be performed on their part] in terms contradicting it, but the facts relied on must be stated"—not the statement of a fact unnecessary to support plaintiffs' case. See Wilson v. Motors Ins. Corp., Mo.App., 349 S.W.2d 250, 253, in which an affirmative defense is defined as "one resting on facts not necessary to support plaintiffs' case". This is so even though defendant had asserted such fact in a portion of its answer designated "affirmative defense".

We repeat, proof of performance of condition precedent was necessary to plaintiffs' cause of action, not defendant's. If performance had not been proved or excuse or justification for delay not established, plaintiffs could not have prevailed.

 Plaintiffs' contention there is not substantial evidence to support the trial court's finding plaintiffs' notice of loss to defendant was not timely must of necessity be based on the theory it was defendant's burden to prove delay in giving notice of loss was not excused or justified. Because of the conclusion reached that it was plaintiffs' burden, the contention cannot be sustained.

We cannot say the trial court applied erroneous rules of law to the facts in arriving at its conclusion.

This holding disposes of plaintiffs' brief points 1, 3 and 4 urged under the one assignment of error.

V. In the other brief point plaintiffs contend that even though Mark's intentionally causing the property damage to the cargo was excluded under the policy, this did not relieve defendant of its obligation to the named insureds, Richard C. and Mildred L. Henschel, where the injured party was seeking to recover from them rather than the additional insured. The trial court made no finding of fact or ruling on this defense. Plaintiffs made no motion that the court's findings be enlarged or amended. Rule 179, R.C.P.

We agree with defendant's contention that in a law case tried to the court issues as to which no findings of fact or conclusions of law are made or requested will not be considered on review. Eno v. Adair Co. Mut. Ins. Assn., 229 Iowa 249, 262–263, 294 N.W. 323, 330; Mason Tire & Rubber Co. v. Lock, 194 N.W. 78, 79 (not reported in Iowa reports); and 5 C.J.S. Appeal and Error § 1460.

The case is therefore

Affirmed.

All Justices concur, except UHLEN-HOPP, J., who takes no part.