**DENNISTON AND PARTRIDGE COM-
PANY, Appellee,**

v.

**Laura MINGUS, Appellant.**

No. 54076.

Supreme Court of Iowa.

Sept. 2, 1970.

Ahlers, Cooney, Dorweiler, Allbec & Haynie, Des Moines, for appellant.

John Donahey and Paul E. Pfeffer, Panora, for appellee.

MASON, Justice.

Denniston and Partridge Company, sometimes referred to in the record as Denniston & Partridge Co., instituted this equitable action to foreclose a mechanic's lien for the balance alleged to be due for furnishing labor and material pursuant to an oral agreement with defendant Laura Mingus to build a double crib and granary on her Guthrie County farm. Defendant filed counterclaim for damages alleging plaintiff had failed to complete the building in a good workmanlike manner.

Defendant appeals from decree of the trial court awarding plaintiff judgment for $5574.51, interest and cost, foreclosure of its mechanic's lien and dismissal of defendant's counterclaim. Her propositions relied on for reversal present the questions whether the court erred in finding no express agreement was formed and that plaintiff had carried its burden of proof. Also involved is dismissal of defendant's counterclaim and the question of burden of proof incumbent on plaintiff by its request for equitable relief in the nature of specific performance of an agreement.

■ I. Our review is de novo. Rule 334, Rules of Civil Procedure.

Laura Mingus, a Des Moines resident, desired to build a crib on her farm north of Guthrie Center. She sought the advice of a neighbor, Foster Purviance, in making ar-

rangements to have it constructed. Before moving to Des Moines Mr. Purviance had been a farmer, had lived near Panora and had been around farm buildings most of his life. He was familiar with a crib which had been constructed by plaintiff in 1956 or 1957 on a Disney farm. Purviance went went to plaintiff's manager, Harry Gibson at Linden, to inquire what it would cost to construct a building similar to Disney's. Gibson examined the Disney invoices and advised Purviance it had cost about $5000.

About a week later Purviance took defendant to see this crib and the same day to see Gibson. There is some dispute as to the exact conversation between Gibson and defendant at that time. Defendant testified that after Gibson told her he could build a similar crib for $5000, "a little more or a little less," she told him to build it. Gibson contends he told defendant one like it would cost between $5000 and $6000 to build. There was some conversation about another crib in this neighborhood which defendant had seen. When advised such a structure would cost $8000 defendant told Gibson she would not want to pay that amount. In any event, the Disney plans were to be used in construction of the Mingus crib and defendant's tenant was to tell plaintiff's carpenters where to build it.

There were no further conversations between defendant and Gibson or any other representative of plaintiff until after the crib was built. However, two or three days after the conversation at Linden and before work was commenced on the crib defendant's tenant, with her approval, told Gibson he would like a crib four feet wider than Disney's. When compared to the Disney crib the additional width enlarged the two 10 by 28-foot cribs to 10 by 32 feet and the driveway was widened from 11 to 12 feet and lengthened to 32 feet. The Mingus building would be 32 by 32 feet.

Purviance was at the Mingus farm when plaintiff's builders staked out the crib and told them where defendant wanted the building.

Other later changes from the Disney plans authorized by defendant involved one cupola on the Mingus crib rather than two, composition shingles instead of wood shingles, a poured cement driveway—a feature not in the Disney crib—and additional ventilators. The footings on defendant's crib were six inches deeper.

When the crib was completed defendant asked Purviance to stop and pick up her bill. When told the amount was $8574.51 Purviance told Gibson to present the bill. Later defendant received a letter from plaintiff enclosing invoices and statement for $8574.51. Of this amount $5152 was for material and $3422 was for labor. Following defendant's receipt of the bill there were some negotiations between defendant and Gibson about the total cost of her crib compared to the price for the Disney crib with Gibson contending the site selected by defendant required considerably more labor and cement for foundation than the Disney crib. When their efforts failed to bring about a settlement plaintiff commenced the present lawsuit.

The court found the parties had agreed plaintiff would build a crib and granary for "$5000, more or less"; thereafter, changes were made and a site requiring additional leveling and concrete work was selected by defendant.

It concluded as a matter of law the parties had an estimate, not an express contract, and with the changes in construction authorized by defendant without any agreement or estimate between the parties as to what the additional costs would be plaintiff was entitled to recover on the theory of an implied contract for the fair and reasonable value of the material and labor.

II. In support of her first proposition defendant contends the court erred in finding no express agreement between the parties and in permitting plaintiff to recover on an implied contract after having pleaded an express contract. She asserts this constituted a variance from the pleadings and conflicts with the rule that one may not

plead an express contract and recover on an implied contract on quantum meruit. She argues the nature, terms and conditions of the contract are important because defendant's obligation cannot exceed that for which she contracted and it was plaintiff's burden to plead and prove the contract upon which it based its right to a mechanic's lien.

Defendant's argument is based on her interpretation that plaintiff alleged an express agreement for construction of the crib and an implied agreement for extras.

In its petition plaintiff alleged its corporate capacity, defendant's ownership of the farm, the furnishing of labor and material pursuant to an oral agreement with defendant; the prices set out in the bill of particulars attached to its petition were the reasonable prices and values of the items furnished; the double crib was completed and plaintiff in all respects had complied with its agreement with defendant; and there remained $5574.51 due from defendant. In its prayer plaintiff asks judgment for this balance and foreclosure of a mechanic's lien previously filed.

In answer defendant admitted plaintiff's corporate capacity, her ownership of the farm and asserted there was an oral agreement with plaintiff to build the double crib and granary. She denied all other allegations in plaintiff's petition and affirmatively alleged the oral agreement was for plaintiff to build the crib for $5000; the amounts set out in the exhibit attached to plaintiff's petition are not the fair and reasonable cost or the amounts agreed upon by the parties and that she had paid $3000 on account during construction. In a separate division defendant asserted the counterclaim mentioned.

In reply plaintiff denied defendant's affirmative allegations and asserted there was an oral agreement to build the crib and granary as pleaded in its amended petition; that various changes which included making the crib larger, adding air vents and cementing the driveway were made at defendant's instance and request; the bill rendered for construction of the crib included the cost of the additions and changes. It denied defendant's counterclaim generally.

We do not agree with defendant's interpretation of the pleadings.

■ It is true that ordinarily one who pleads an express contract alone cannot recover under an implied contract or quantum meruit and the pleader has the burden to prove the contract declared on as a basis for its mechanic's lien. Sitzler v. Peck, 162 N. W.2d 449, 451 (Iowa 1968); Carlson v. Maughmer, 168 N.W.2d 802, 803-804 (Iowa 1969) and citations in these opinions.

"However, it is equally well settled that there may be an implied contract on a point not covered by an express one. * * * [Citing authorities].

"It often happens that there is an express contract as to the employment, but no agreement as to the amount of compensation, in which case the law implies a promise to pay reasonable compensation. * * * [Citing authorities]." Sitzler v. Peck and Carlson v. Maughmer, both supra.

As permitted by the foregoing rules plaintiff alleged in its petition as amended an oral agreement to furnish the labor and material for the construction of a double crib and granary with overhead bins. It did not allege an agreement as to the price to be paid therefor but asserted "the labor and materials were furnished and delivered * * * for the respected prices as shown * * * [in the itemized statement attached] and said the prices are the reasonable prices and values thereof." A similar allegation was held in Carlson v. Maughmer sufficient to invoke the doctrine of implied contract that defendant would pay the reasonable value therefor.

■ We therefore hold plaintiff pleaded and proved an express oral agreement to furnish labor and material for this project to be built on the Disney plans as modified by material changes authorized by defend-

ant but did not plead an express agreement as to compensation. Plaintiff pleaded sufficient facts to invoke the doctrine of implied contract that defendant would pay the reasonable value of labor and material for the project constructed.

The court did not err under the circumstances in permitting plaintiff to recover on an implied contract for the reasonable value of labor and material furnished even though plaintiff had alleged and proved an express agreement as to the type of construction.

Defendant's contention that there was a variance between the pleadings and proof cannot be sustained. See Sitzler v. Peck, 162 N.W.2d 449, relied on and summarized by the trial court as holding "although plaintiff pleaded specific contract as to services to be performed in construction of prefabricated house for defendants, where he did not plead any agreement as to compensation, plaintiff's evidence as to reasonable value was admissible."

In her remaining contention under this assignment defendant urges her obligation cannot exceed that for which she contracted.

However, defendant did not have a firm bid or offer as to compensation to be paid for building the type of crib finally constructed in accordance with her requirements. As mentioned Gibson told defendant at their first meeting plaintiff could build a crib and granary similar to Disney's for "$5000 more or less" (defendant's version) or for "$5000 to $6000" (plaintiff's version). Although these figures were based on the 1956 or 1957 plans and invoices Gibson testified there had not been a substantial increase in price when the Mingus crib was built in 1965. The court concluded after taking into consideration the fact these figures were based on plans significantly altered at defendant's direction plus her selection of a site that increased the cost of labor and cement for foundation by $1000, the statement "more or less" was merely an estimate and did not constitute an offer to build the Mingus structure for a precise maximum total price.

Gibson's language as to the figure plaintiff could build a crib similar to Disney's was too indefinite under the circumstances here to be interpreted as a binding offer to build for a maximum total price the type of crib and granary finally agreed upon by the parties. Defendant's direction to Gibson "to build it" did not cure this defect.

This is not a factual situation for application of the rule contended for by defendant and as announced in Seybolt v. Baber, 203 Md. 20, 97 A.2d 907, 909 and quoted in 17A C.J.S. Contracts § 363 to the effect "where the contractor submits an estimate that the proposed work will cost not less than a certain sum and not more than another sum, whereupon he is directed to perform the work, no contract for a specified sum arises, and the contractor can recover for the reasonable value of services rendered, but not exceeding the larger sum."

No estimate with reference to the type of crib and granary ordered by defendant and actually built by plaintiff was ever requested or given as to the minimum or maximum total price. The only estimate ever given was in reference to a crib based on Disney plans and specifications without modifications or alterations.

The "estimated cost" of a building means the reasonable cost of a building erected in accordance with plans and specifications referred to and not necesarily the amount agreed upon by the parties or an offer accepted by defendant. New Orleans Terminal Co. v. Dixie Rendering, La.App., 179 So. 98, 100. An estimate is equivalent of "more or less" and does not pretend to be based on absolute calculations. Use of the word precludes accuracy. "To make an estimate" ordinarily means to calculate roughly or to form an opinion as to amount from imperfect data. See Beeler v. Miller, Mo.App., 254 S.W.2d 986, 990 and authorities cited; 15 Words and Phrases, "Esti-

mate", pp. 373–380; Black, Law Dictionary (Fourth Ed. 1951), 648; Ballentine's Law Dictionary, (Third Ed. 1969), 420.

Under the circumstances the court adopted the standard of reasonableness and properly permitted introduction of evidence bearing on the issue of fair and reasonable value for the labor and materials.

III. Defendant also contends the court erred in finding plaintiff had sustained its burden in regard to the amount of the lien. She maintains the finding is based on the erroneous theory that when the lienholder proved the various items of labor and material were furnished and the reasonable value thereof claimant had sustained its burden of proof and defendant's only method of controverting or defending was by showing which items were overpriced or unreasonable.

■ In this connection the phrase "burden of proof" is used to express the idea that a named litigant must in the end establish a given proposition in order to succeed. Henschel v. Hawkeye-Security Insurance Company, 178 N.W.2d 409 (Iowa, filed June 23, 1970), and authorities cited.

Defendant does not contend the specified items of labor and material were not furnished or that any item was overpriced but takes the position the extent of recovery in the factual situation before the court is to be determined in the first place from the total charge made for the construction involved and not from value of separate items of material and labor furnished therefor.

■ We consider defendant's argument in the light of plaintiff's theory of recovery. As pointed out, the parties formed an express agreement as to the type of structure plaintiff was to build defendant. However, plaintiff pleaded and relied on an implied contract defendant would pay the reasonable value thereof. Plaintiff had the burden to prove the contract declared upon. In addition to the authorities previously cited for this see A and R Concrete

and Cons. Co. v. Braklow, 251 Iowa 1067, 1070, 103 N.W.2d 89, 91. In other words, plaintiff had the duty to produce evidence ultimately establishing to the satisfaction of the court what such value was or face the threat of a finding the evidence was insufficient to warrant a favorable decree. Plaintiff proceeded to establish the reasonable value of its services by showing the various items furnished and the amount of labor performed on the building and the reasonable value thereof.

Defendant argues this is not sufficient. She contends that where a lienholder has agreed to furnish all materials and labor and supervise construction of the project for the reasonable value thereof and the landowner in seeking to defend offers evidence that the total claim being made is not the reasonable cost of constructing a similar building in the area at the time such lienholder is required to show the total charge was reasonable. If plaintiff does not go forward at this point with evidence as to the reasonableness of the total claim for the structure it does not successfully carry the burden imposed in such circumstances on one seeking foreclosure of a mechanic's lien.

In this regard, it is true Gibson supervised construction of the building but no claim is made this resulted in any unauthorized change affecting cost of labor and material. Defendant inspected the Disney crib to some extent before her first meeting with Gibson. The Disney plans which the parties agreed would serve as a pattern for the Mingus crib specified the type of material to be used, method of bracing and other particulars of the structure. Specifications were to be the same except where necessary changes were required for making the Mingus crib larger or in order to meet substantial changes requested by defendant's tenant and authorized by her. These changes pointed out in Division I supra plus Purviance's selection of a site with defendant's approval accounted for the increase in cost over those for the Disney crib, not Gibson's supervision.

As stated, plaintiff had the burden in the sense previously indicated in this division on the issue of reasonable value of its services. In reviewing this equitable action it is our duty to consider and determine the case anew. Plaintiff's evidence bearing on reasonable value of labor and material furnished was sufficient to avoid an unfavorable ruling on the issue of reasonable value of its services at the close of its evidence. Although defendant's evidence relative to cost of constructing similar cribs in the area was a pertinent matter for consideration by the trier in determining whether defendant's effort to controvert plaintiff's proof on the issue was sufficient it is not conclusive as defendant contends.

■ We do not agree with defendant the fact Gibson supervised construction to the extent shown has the result of making defendant's evidence so irresistible at the close of all evidence to require a ruling plaintiff had failed to sustain its burden of persuasion as a matter of law because of not going forward with evidence the total cost of construction of the Mingus crib was reasonable. The issue of reasonable value of plaintiff's services was still one of fact.

IV. Closely connected with the proposition considered in the previous division is defendant's assertion that in finding "defendant failed to show by any competent evidence where any of the materials were overpriced or unreasonable," the court completely disregarded the testimony of Raymond Ocheltree, Duane Johnson and Glenn Allen.

Miss Mingus offered these witnesses as experts for their opinion as to the reasonable costs of constructing a similar crib in the area. Although their qualifications to testify on the subject in hand were challenged at trial, sufficient facts were introduced as to their experience to furnish a foundation for them to give an opinion.

Ocheltree, manager of the Bayard Building and Supply Company, expressed the opinion labor in constructing a similar crib in the area at the time would run between $1500 and $1700 and material would cost $3833.58 for a total cost of $5500. Johnson, a carpenter living in Bayard who had worked in the Guthrie Center area and had built 20 cribs in the last 17 years, believed a similar crib could have been built in 1965 for a total of $5200. Allen, defendant's present tenant who engaged in carpentry as a sideline, testified that two similar cribs in the neighborhood cost $4359.04 and $5012.

Each witness narrated facts upon which he based his individual opinion. In review we are thus afforded a foundation for determining whether the witness's conclusion is justified rather than being forced to accept or reject it upon the expert's abstract qualification alone.

In reviewing the testimony of defendant's experts we find many features included in construction of the Mingus crib were not considered by them in arriving at an opinion as to reasonable cost of constructing this crib or one similar, or at least their testimony narrating the factual basis for their opinion fails to mention many facts we deemed important in determining whether their opinion was justified.

■ We have considered their testimony in the light of the foregoing and do not find it persuasive as controverting plaintiff's proof of value of its services. In support of our position see Dougherty v. Boyken, 155 N.W.2d 488 (Iowa 1968); Hedges v. Conder, 166 N.W.2d 844 (Iowa 1968) and authorities cited in Division IV thereof.

V. In two of defendant's remaining propositions relied on for reversal she contends the court erred in seven specific instances in its findings and in failing to require plaintiff to sustain the burden incumbent on it by its request for equitable relief in the nature of specific performance of an agreement.

■ Many of these contentions have been considered in previous divisions of this opinion. In reference to those not specifically referred to earlier we call attention to the fact that in view of the extent of our review "if the trial court reached the right result any error in its reasoning or findings is deemed not prejudicial and is of no avail to defendants here." See Lautenbach v. Meredith, 240 Iowa 166, 168, 35 N.W.2d 870, 871. Since we conclude the trial court reached the right result on defendant's appeal from the decree awarding plaintiff judgment, error, if any, in its findings does not help defendant on this appeal.

VI. In her remaining proposition defendant challenges the decree of the trial court dismissing her counterclaim. The court concluded defendant's counterclaim had merit but she had not established the damages in regard thereto.

The only item the court felt could be considered in connection with the counterclaim was location of the cupola on the crib. There were two cupolas on the Disney crib, only one on the Mingus building. Rather than being placed in the center of the crib it was placed nearer the east end.

The court determined location of the one cupola off-center was a variance from the Disney plan and the proper measure of damages would be the difference between value of the crib as built and its value if two cupolas were installed. Since no evidence showing difference in value was introduced the court had no method of arriving at actual damages.

Gibson said the cupola was placed to the side to prevent blocking the driveway when a portable elevator was used for carrying grain to the bins; this location was according to the design of the crib as shown by the blueprints. No one disputes this except Purviance to the extent that it was his understanding Miss Mingus wanted a crib like Disney's.

Gibson testified, "If I or my crew had known that she wanted it in the middle, we would have been willing to do that. It doesn't make any difference to us where it was at. We didn't want them to say we blocked the driveway."

The wife of defendant's tenant testified that during construction she called her husband's attention to the position of the cupola but couldn't remember whether anything was mentioned to plaintiff's workmen.

Before trial Allen had moved the cupola from the east end to the center of the crib. This involved a cost of $5 for material and $68 for labor.

■ As a basis for her counterclaim defendant alleged plaintiff failed to construct the crib in accordance with agreement of the parties and in good workmanship manner, specifically *"the cupola* was located clear to one side instead of being located in the middle as agreed upon." (emphasis supplied) She does not allege the agreement provided for two cupolas, her complaint is as to location. She had the burden to prove plaintiff's breach as alleged and failed to establish an agreement as to location of one cupola.

The court reached the right result in dismissing the counterclaim.

In view of our conclusion we do not reach defendant's contention the trial court applied an improper measure of damages.

Judgment and decree of the trial court is

Affirmed.

All Justices concur.