**IN THE COURT OF APPEALS OF IOWA**

No. 14-0416
Filed February 25, 2015

**JIRAK CONSTRUCTION, LLC,**
        Plaintiff-Appellee,

**vs.**

**DANIEL H. BALK and KATHERINE J.
BALK,**
        Defendants-Appellants,

**and**

FIRST SECURITY BANK AND TRUST CO.,
        Defendant.
_____

        Appeal from the Iowa District Court for Chickasaw County, Richard D.

Stochl, Judge.


        Homeowners appeal the entry of judgment for a construction company for

its work and materials and foreclosure of a mechanic's lien on their property.

**AFFIRMED.**


        Christopher F. O'Donohoe of Elwood, O'Donohoe, Braun & White, New

Hampton, for appellants.

        Kevin J. Kennedy of Kennedy & Kennedy, New Hampton, appellee.


        Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**TABOR, J.**

This appeal involves a contract dispute between Daniel and Katherine Balk, owners of a 1900s-era farmhouse in Chickasaw County, and Jirak Construction, which undertook a remodeling project for the Balks. The district court entered judgment in favor of Jirak and against the Balks in the amount of $55,609.49, plus interest, and foreclosed a mechanic's lien. The Balks appeal, contending Jirak should have been held to its initial estimate of the project's cost and—when their payments and costs to properly complete the work are subtracted—Jirak actually owes them $4325.84.

Because the district court properly applied Iowa contract law to the facts of this case, we affirm its ruling by memorandum opinion. *See* Iowa Court Rule 21.26(a), (b), (c), and (e).

In early 2012, the Balks approached Jirak about building an addition to their home in Lawler, Iowa. On February 9, 2012, Jirak provided the Balks with an initial estimate of $45,975 for the cost of building the new addition. After meeting with a designer, the Balks' plans changed slightly. Jirak began construction on June 19, 2012. After construction began, Daniel Balk made significant changes to the building plan—including increasing the size of the addition, upgrading the windows, adding new windows, and replacing the siding on part of the house. Jirak had not considered these plans in its original estimate.

As construction progressed, Jirak and the Balks continued to discuss the project and make additional alterations to the initial plan; the parties agreed on

the changes. Jirak provided regular invoices to the Balks about ongoing costs. In November 2012, the Balks began to question the overall cost of the project and requested an itemized breakdown of the work performed. Jirak provided that information. Through November 15, 2012, the Balks paid Jirak $67,000.00 for work performed. But, according to Jirak, the Balks still owed $55,000.00 in labor and materials. The Balks refused to make additional payments. Jirak acknowledged the project was incomplete, but left the job due to the Balks' refusal to pay.

On December 12, 2012, Jirak filed a mechanic's lien against the Balks' real estate for the unpaid balance. On January 23, 2013, Jirak filed a petition demanding judgment against the Balks for $55,609.49, plus interest. The Balks filed an answer and counterclaim. The district court held a trial on September 20, 2013.

On January 30, 2014, the court foreclosed the mechanic's lien and entered judgment for Jirak in the amount requested. The court determined Jirak performed the work according to the Balks' specifications and their agreement was "clearly for payment of time and materials. It was not a firm bid price job." The court concluded Jirak was entitled to payment for the work and materials provided and rejected the Balks' allegations that claimed defects were due to substandard work by Jirak. The Balks appeal.

An action to enforce a mechanic's lien is heard in equity and we review the district court's decision de novo. *Flynn Builders, L.C. v. Lande*, 814 N.W.2d

542, 545 (Iowa 2012). We give weight to the district court's findings of fact, but are not bound by them. *Id.*

On appeal, the Balks contend Jirak's initial written estimate constituted an offer and their acceptance of the offer locked in the quoted price. The Balks argue: "The parties each provided consideration in the form of a promise—one to perform, the other to pay. The actual cost of construction ultimately exceeded the bid amount, and to the extent that is due to a mistake in Jirak's judgment or quote process, the mistake is attributable to Jirak." The Balks argue any costs over the initial estimate amount are the responsibility of Jirak and we should award them $4325.84.

We follow the lead of the district court in rejecting the Balks' contention. Jirak's initial estimate of $45,975 was expressly an approximation. The description delivered to the Balks on February 9, 2012 stated: "These are approx. costs until we get final details." The estimate was not a binding offer. *See Denniston & Partridge Co. v. Mingus*, 179 N.W.2d 748, 752 (Iowa 1970). The discussion in *Mingus* is useful here:

> The "estimated cost" of a building means the reasonable cost of a building erected in accordance with plans and specifications referred to and not necessarily the amount agreed upon by the parties or an offer accepted by defendant. . . . An estimate is equivalent of "more or less" and does not pretend to be based on absolute calculations. Use of the word precludes accuracy. "To make an estimate" ordinarily means to calculate roughly or to form an opinion as to amount from imperfect data.

*Id.* (citations omitted).

The parties in this case entered into oral modifications of the initial estimate, which ultimately formed the binding contract. *See Seneca Waste*

*Solutions, Inc. v. Sheaffer Mfg. Co.*, 791 N.W.2d 407, 413 (Iowa 2010) (noting consent to modification "may be either express or implied from acts or conduct"). "When a party to a contract modifies the scope of the work by requesting 'extras' or additional work, the party must pay the fair and reasonable value of the extra work." *Id.* (citing *DeMuth Landscaping & Design v. Heggestad,* 461 N.W.2d 354, 356 (Iowa Ct. App.1990) (contract implied from the evidence when contractor hired to landscape north side of lakeshore bank but then requested additional landscaping of south side of bank)). The Balks made significant changes to the building plans; Jirak agreed to the changes, began performance, and sent invoices to the Balks, which they paid. The Balks are responsible for the fair and reasonable value of the modifications they requested.

**AFFIRMED.**