TREASURE STATE INDUSTRIES, INC., a MONTANA CORPORATION, PLAINTIFF AND RESPONDENT, v. S. A. LEIGLAND AND H. M. LEIGLAND, DOING BUSINESS AS LEIGLAND COMPANY, AND UNITED STATES FIDELITY AND GUARANTY COMPANY, A CORPORATION, DEFENDANTS AND APPELLANTS.

No. 11409.
Decided June 24, 1968.
As Amended July 9, 1968.
Rehearing Denied July 12, 1968.
443 P.2d 22.

290

Smith & Emmons, Robert Emmons, (argued), Great Falls, for appellants.

Dzivi & Conklin, William Conklin (argued), Great Falls, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This appeal is from a judgment in favor of the plaintiff for $8,466.02, plus $2,199.83 attorney's fees, plus plaintiff's costs and disbursements, entered in the district court of the Ninth Judicial District, in and for the County of Pondera. Pursuant to agreement of counsel the trial was held in Great Falls, before the Honorable R. D. McPhillips, district judge, sitting without a jury.

In March of 1965, the Board of Trustees of School District No. 18 of Valier, Montana, awarded the defendant Leigland Company the general contract to construct an addition to the Valier High School. Leigland Company provided the public works contractor's bond as required by sections 6-401—6-404, R.C.M. 1947, with United States Fidelity & Guaranty Company (U.S.F.&G.), as surety.

About May 22, 1965, Leigland Company awarded a subcontract to one Haines Stahl, doing busines as Haines Stahl Com-

pany, for the masonry work on the Valier School addition. Leigland Company did not require Stahl to obtain a bond covering this sub-contract. The contract states that Stahl was an independent contractor, not an agent of Leigland Company. Stahl was to obtain all of the masonry materials to be used for the job. The mount of the masonry sub-contract was $36,554.00.

Mr. Sal Leigland, a partner in Leigland Company, prior to entering the contract with Stahl talked on the street in Great Falls with a Mr. Knight, an employee of Treasure State Industries, the plaintiff here, about Stahl's credit. and was informed that his credit with plaintiff was good at that time.

Mr. Leigland testified that before contracting with Stahl he called the credit manager of plaintiff, Mr. Ben Sheffield, and further inquired of Stahl's credit; he was told that it was good at that time. Mr. Leigland testified he then told Mr. Sheffield of Treasure State Industries that Leigland Company wanted to issue joint checks payable to Stahl and Treasure State for masonry materials to be used on the Valier job, such materials to be provided by Treasure State. Mr. Sheffield denied having this conversation.

After signing the sub-contract Stahl made arrangements with Treasure State for the delivery of masonry materials, mostly brick and block, to be used on the Valier job. Treasure State had no contract with Leigland Company, only with Stahl. Treasure State first delivered materials to Valier on July 29, 1965. In the early part of September 1965, Treasure State began sending invoices to Leigland Company, as well as to Stahl, covering all of the materials charged to Stahl's account being sent to Valier. This was done in compliance with a request of an employee of Leigland Company. The last delivery of materials made by Treasure State to Valier was on November 3, 1965.

On July 30, 1965, Stahl submitted his estimate No. 1 on the Valier job for $1,553.30, to Leigland Company. Thereafter, on August 16, 1965, Leigland Company made out a check to Haines Stahl in the amount of $1,800 to cover this estimate.

On August 31, 1965, Mr. Stahl mailed to Leigland Company his estimate No. 2 which listed $4,535.90 due for materials and $2,149.88 due for labor. On September 29, 1965, Stahl mailed his estimate No. 3 to Leigland Company which listed $2,663.88 due for materials and $5,053.41 due for labor. When estimate No. 3 was submitted Stahl had received no funds pursuant to estimate No. 2.

. On October 6, 1965, Haines Stahl and his wife traveled to Great Falls, for the purpose of obtaining money from Leigland Company. . On this date Leigland Company issued a check in the amount of $6,000 payable jointly to Haines Stahl and Treasure State. The testimony is conflicting as to the circumstances surrounding the issuance of this check.

Sal Leigland testified that Mr. and Mrs. Stahl came to his office seeking money to meet their payroll. Mr. Leigland said he refused to issue a check to Stahl alone. He said he telephoned Mr. Sheffield of Treasure State and told him that he was going to issue a joint check payable to Haines Stahl and Treasure State. He did not recall any conversation about how the check should be divided between the two payees, but said he told Sheffield that Stahl did not have more than $2,000 worth of labor in the job. Mr. Leigland also said he told Mr. Sheffield at that time that Stahl's work was unsatisfactory. A Mr. Sundquist, a Leigland employee, testified that he listened to this conversation on another telephone and confirmed Mr. Leigland's testimony.

Haines Stahl testified that while he was in Leigland Company's offices that day Mr. Leigland talked with someone at Treasure State on the telephone. He said it was agreed that he was to get some money from Treasure State out of a check issued by Leigland Company to himself and Treasure State jointly.

Mr. Sheffield denied he talked to Mr. Leigland at that time. He said Mrs. Stahl came to his office with the $6,000 check payable to Stahl and Treasure State. He then testified he telephoned Leigland Company and talked with Mr. Sundquist. Mr.

Sheffield said Mr. Sundquist agreed to a division of the check in which Stahl got $2,000, and Treasure State $4,000. This division was effected and is roughly in accord with Stahl's estimate No. 2 which called for $4,535.90 for materials and $2,149.88 for labor.

Treasure State sent Leigland Company a written memorandum on October 7, 1965, showing the split of the $6,000 check. Leigland Company at no time objected to the split of the check.

On October 19, 1965, Leigland Company mailed a check for $6,900 to Mr. Stahl. Sal Leigland testified that before mailing this check he called Mr. Knight of Treasure State and told him Leigland Company might have to remove Stahl from the Valier job as his performance was unsatisfactory and Treasure State should take precautions to collect for materials furnished. Mr. Knight recalled this conversation and said he told Mr. Sheffield about it. Mr. Sheffield did not recall being told about the conversation.

On October 25, 1965, Mrs. Stahl went with the $6,900 check to the Treasure State offices and talked with Mr. Sheffield. Mr. Sheffield testified he agreed with Mrs. Stahl that Treasure State would take $2,500 of the check and Stahl $4,400—as this was roughly in accord with Stahl's estimate No. 3 which listed $2,663.68 for materials and $5,053.41 due for labor. Mr. Sheffield testified that before actually dividing the check he called Mr. Sundquist at Leigland Company and obtained his consent to the division. Mr. Sundquist denied having received the call or agreeing to the split of the check. By written memorandum of October 25, 1965, Treasure State informed Leigland Company of this split of the $6,900. There was no objection by Leigland Company.

On October 28, 1965, Stahl submitted his estimate No. 4 to Leigland Company showing $5,721.44 due for materials from Treasure State and $6,748.74 due for labor. No payment was made by Leigland Company pursuant to this estimate.

On November 12, 1965, Leigland Company removed Mr.

Stahl as the masonry subcontractor on the Valier job. Sal Leigland estimated that at this time 5 percent of the block work remained to be done but a substantial amount of what was finished needed to be corrected. He also estimated 60 percent of the brick work remained to be done at that time. Leigland Company then contracted for the remaining masonry work with a Mr. Ingebrigtson and he finished the job with the materials that had been supplied to Stahl by Treasure State.

The $4,000 retained by Treasure State from the first joint check and the $2,500 retained from the second were credited to Stahl's account with Treasure State for the Valier job. These amounts, plus a credit given to the account for some blocks returned at the completion of the job by Leigland Company, were the only payments that Treasure State credited to Stahl's account. Treasure State claims a net balance due of $8,446.02.

The last delivery of materials by Treasure State was on November 3, 1965. Mr. Sheffield testified that on January 31, 1966, he sent Leigland Company, the Valier School Board and U. S. F. & G., by certified mail, notice of Treasure State's claim for $8,446.02, for materials—thus fulfilling the requirement under the bond that a materialman who claims under the bond give notice to two of the owners, the principal, and the surety within 90 days after the last delivery of materials. The notice sent to Leigland Company was introduced into evidence and the original notice sent to the school board was likewise introduced.

It is admitted Treasure State did not introduce evidence showing it gave written notice to Leigland Company that it had started supplying materials to Stahl for use on the Valier job within 7 days after July 29, 1965, the date of the first delivery, in compliance with section 6-402, R.C.M. 1947.

Trial of the cause was had on November 14, 1966. At the trial evidence was introduced pursuant to a counterclaim made by defendants. The judgment of the lower court denied this

counterclaim and dismissed the cross-complaint; there is no appeal from this part of the judgment so it will not be reviewed.

Appellants, Leigland Company and U. S. F. & G., first attack the right of respondent, Treasure State, to maintain this action. The main contract to construct an addition to the Valier High School involves a public work. Thus Title 6, Chapter 4, R.C.M. 1947, applies. The bond given was pursuant to this chapter. Although it has since been amended, at the time of this contract section 6-402, R.C.M. 1947, provided that in order for a materialman who supplies a sub-contractor to maintain an action against the contractor or his surety he must, not later than 7 days after the date of the first delivery of materials, give written notice to the contractor that he has started to deliver materials to the sub-contractor. Appellants claim that this notice was not given and thus respondent had no right of action under Title 6, Chapter 4, R.C.M. 1947, and its only recourse is against the sub-contractor, Stahl.

In the record of this cause there is no showing that the 7 day notice was or was not given. In paragraph V of its complaint respondent alleged that it had "complied with all conditions precedent to the bringing of this suit." In their answer appellants generally stated: "Deny all the allegation of paragraph V." Rule 9(c) of the Montana Rules of Civil Procedure is taken verbatim from the Federal rule and states:

"*Conditions Precedent.* In pleading the performnace or occurence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurence shall be made specifically and with particularity."

The conditions precedent referred to in this rule are those the performance or occurrence of which are prerequisite to a claim upon which relief can be granted. In most instances. there is no question of the performance of conditions precedent. and Rule 9(c) thus puts the burden on the defendant to raise

the issue when there is actually a question. Under this rule a general denial will not put the performance or occurrence of any condition in issue. 1A Barron & Holtzoff, § 304, pp. 232, 233; 2A Moore's Federal Practice, Para. 904, P. 1944.

The respondent did not introduce any evidence at the trial that the 7 day notice required by section 6-402, R.C.M. 1947, was given and he was not required to. The general denial of the allegation that all conditions precedent were performed did not put the matter in issue and it must be treated as an admission they were performed. Lumbermens Mutual Insurance Company v. Bowman, 313 F.2d 381 (10th Cir., 1963); Moore v. Schoen, 313 Ill.App. 367 (1942), 40 N.E.2d 562; Halferty v. Wilmering, 112 U.S. 713, 5 S.Ct. 364, 28 L.Ed. 858.

The appellants at trial did not make an affirmative defense that the 7 day notice was not given, they did not mention the matter at all until submitting proposed findings of fact and conclusions of law for the consideration of the court. It was then too late to raise the matter as it was not in issue at the trial.

If the notice required by section 6-402, R.C.M.1947, had been at issue during the trial and it was found that it had not been given, appellants could not in this case defeat the action. Although the factual situation is similar, this Court held in H. Earl Clack Co. v. Staunton, 105 Mont. 375, 72 P.2d 1022, that the requirements of notice in section 6-402, R.C.M. 1947, could be waived by the party the statute was designed to protect. See also Anaconda Copper Min. Co. v. Ravalli County, 56 Mont. 530, 186 P. 332; and section 49-105, R.C.M.1947.

There is ample evidence in the record to support a finding that the statutory notice was waived by Leigland Company, the party the law was designed to protect.

By the testimony of Sal Leigland it is seen that before the sub-contract was entered into with Stahl, Leigland Company knew the masonry materials were to be furnished by Treasure State. Mr. Leigland testified he spoke with Mr. Sheffield in May 1965, at that time there was discussion of how

Treasure State was to be paid for the masonry materials. At the request of appellant, Leigland Company, Treasure State supplied them with invoices covering all of the materials delivered to Valier. The payments Leigland Company did make were in the form of checks with respondent as joint payee. There can be no doubt Leigland Company knew from the beginning that Treasure State was supplying masonry materials for the job at Valier and consented to such action. To require Treasure State to give more notice than was given here would be to require an idle act and to defeat its claim on this ground would deny it justice.

Appellants also claim plaintiff-respondent's exhibit No. 6, which purports to be the original notice of the claim which was sent to the Board of Trustees, School District No. 18, Valier, was improperly admitted into evidence and therefore there is no proof the notice required by the bond and section 6-404, R.C.M.1947, was given. Section 6-404 requires that a materialman who has a claim provide notice of such claim to the public body that let the main contract; in this case the School Board at Valier. The bond requires that any two of the principal, the owner or the surety be given notice of the materialman's claim. This notice must be given within 90 days of the completion of the contract to the School Board and within 90 days of the last delivery of materials to those named in the bond. It is admitted that respondent gave timely and sufficient notice to Leigland Company. However, since exhibit No. 6, the notice addressed to the School Board at Valier, is the original and is not marked in any way to show it was received, the appellants claim that it is inadmissible to prove the required notice was given to the School Board, the second of those to whom the bond requires notice be given.

Mr. Sheffield testified that on January 31, 1966, he saw Mr. J. Brad Seely, the president of Treasure State Industries, sign exhibit No. 6; that he himself placed the notice in an envelope addressed to the Board of Trustees, School Dis-

trict No. 18, Valier, Montana, placed sufficient postage thereon and mailed it by certified mail at the post office in Great Falls, Montana. It is presumed a letter duly directed and mailed was received in the regular course of the mail. Section 93-1301-7 (24). The testimony of Mr. Sheffield was sufficient foundation for Judge McPhillips to admit the original document into evidence and it is uncontradicted evidence upon which he could rely in making his finding that the required notices were given.

The appellants next specify as error the amount the trial court found to be due on respondent's claim. They assert the claim for materials of $14,966.02 was reduced by the total amount of the two checks, $12,900.00, issued jointly to respondent and Stahl, leaving a balance due respondent of $2,066.02. The trial court found that the claim for $14,966.02 was reduced by the amount received from the checks after splitting the funds with Stahl, $6,500.00, leaving a balance of $8,466.02.

The two checks, one for $6,000 and one for $6,900, drawn by Leigland Company, were made payable to Stahl and Treasure State. Thus, appellants assert, Treasure State had complete control over the funds and any amount which Stahl received was solely an extension of credit to Stahl by Treasure State. This is not automatically so. The checks were payable only to both Stahl and Treasure State, Stahl had as much control over the funds as did Treasure State. Section 87A-3-116(b), R.C.M.1947.

The issuance of joint checks is not sufficient to support the appellants' position. The joint checks were a payment to both Stahl and Treasure State. The two checks totaling $12,900.00 could not discharge a $12,900.00 debt to Stahl and also a a $12,900.00 obligation to Treasure State.

Leigland Company did not direct how the checks were to be divided. The lower court found, based on credible evidence in the form of Mr. Sheffield's testimony, there was no agreement that any amount Stahl received from the checks was an

extension of credit to him by Treasure State; that Leigland Company agreed to the split of these checks, $6.500 to respondent and $6,400 to Stahl; that respondent gave written notice to Leigland Company of the split of the checks and they did not object. Appellants are not now in a position to claim that the entire amount of both checks should have been paid to respondent.

The respondent obtained a partial transcript of the trial, at a cost of $122.50, to be used in the preparation of its proposed findings to be submitted to the trial court.

The appellants took the deposition of Mr. Sheffield. The respondent obtained a copy of this deposition and paid $23.40 for it.

These items were allowed by the trial court as recoverable items of cost and appellants claim error. The court erred in allowing these two items and the judgment should be amended accordingly. See Davis v. Trobough, 139 Mont. 322, 363 P.2d 727.

Judgment of the lower court is affirmed but returned to it for modification.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES HASWELL, ADAIR, and CASTLES, concur.

---

TREASURE STATE INDUSTRIES, INC., A MONTANA CORPORATION, PLAINTIFF AND RESPONDENT, v. S. A. LEIGLAND AND H. M. LEIGLAND, DOING BUSINESS AS LEIGLAND COMPANY, AND UNITED STATES FIDELITY AND GUARANTY COMPANY, A CORPORATION, DEFENDANTS AND APPELLANTS.

No. 11409.

PER CURIAM:

The opinion of this Court filed on June 24, 1968, is hereby amended by adding the following sentence at the conclusion thereof, to-wit:

"Respondent shall have its costs on this appeal."

DATED this 9th day of July, 1968.