No. 12756

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

JAMES TALCOTT, INC.,
a New York Corporation,

Plaintiff and Appellant,

-vs-

MURRY REYNOLDS, d/b/a
REYNOLDS & SON,

Defendant and Respondent.

---

Appeal from: District Court of the Fourth Judicial District,
Honorable Edward T. Dussault, Judge presiding.

Counsel of Record:

For Appellant:

McGarvey, Morrison, Hedman and Moore, Kalispell,
Montana
James D. Moore argued, Kalispell, Montana

For Respondent:

Alex C. Morrison argued, Plains, Montana

---

Submitted: September 17, 1974

Decided: DEC 18 1974

Filed: DEC 18 1974

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Plaintiff, James Talcott, Inc., a New York corporation, brought this action in the district court, Flathead County, /to recover a deficiency judgment against defendant Murry Reynolds. The jury held in favor of defendant and plaintiff appeals.

On May 3, 1966, defendant purchased a mountain logger from Star Equipment Company in Missoula, Montana. A mountain logger is a device with four large tires, hinged in the middle and a winch in the back. Its purpose is to skid logs from the location they are felled to a landing, where they can be loaded onto a truck.

To finance the purchase defendant executed a conditional sales contract and a note in favor of plaintiff. The note required defendant to make 39 monthly installments of $426.96, and a final installment of $427.08, for a total contract price of $17,078.52. The conditional sales contract contained a clause giving plaintiff the right to declare all the installments immediately due and payable upon any default by defendant.

Defendant took possession of the machine, completed the first four payments but failed to make the fifth. Instead of demanding that all payments be immediately made, pursuant to the default clause, plaintiff chose to grant an extension. During the next four years, when the contract should have been paid in full, defendant was granted a total of ten extensions but only 24 of the required 40 payments were made.

On November 18, 1969, defendant made a single payment. Plaintiff then notified defendant that the next payment would be due in December and requested defendant to notify him if the payment could not be made. Defendant did not respond to this letter and no other payments were ever made. Defendant then attempted to sell the machine to settle the account but no interested buyer

could be found.

On June 29, 1970, some eight months after the last payment had been made, plaintiff wrote a letter to defendant stating that a representative from Lynnwood Equipment Company would pick up the machine and transport it to the Seattle area where it would be sold. In the early part of August 1970, defendant delivered the machine to Lynnwood's agent who transported it to the Seattle area where it was prominently displayed on Lynnwood's lot. After nearly two months of futile efforts directed toward selling the machine, plaintiff, on September 21, 1970, wrote to defendant advising him that Lynnwood was unable to sell the machine and recommending the machine be sold at auction in the latter part of October 1970. Plaintiff also requested defendant to contact him if this method of selling the machine was not acceptable. Again, defendant did not respond, so the following letter was written:

"Mr. Murry Reynolds dba
REYNOLDS & SON COMPANY                    October 13, 1970
P. O. Box 1434
Trout Creek, Montana 59874        Re:  Account No. 3520


Dear Mr. Reynolds:

Since you have not responded to our letter of September 21, we have authorized the sale of the mountain logger by Murphy Auctions, 757 Main Street, Edmonds, Washington. The equipment will be sold to the highest bidder on Friday, October 30, 1970.

                            Very truly yours,
                            JAMES TALCOTT, INC.

                            R. W. Stotts, Jr.
                            Credit Department
RWS/lw"

On October 30, 1970, the mountain logger was sold by Murphy Auctions for $2,000. Plaintiff deducted the $2,000 less the expenses of the sale from the defendant's account and sued to recover the deficiency. Trial was held and the jury returned a verdict in favor of defendant. Plaintiff's motions for a

- 3 -

directed verdict and for a judgment notwithstanding the verdict were denied.

Three issues have been set forth for consideration:

1. Was the sale of the mountain logger commercially reasonable?

2. Did plaintiff comply with the notice of sale provisions of the Uniform Commercial Code?

3. Is plaintiff barred from securing a deficiency judgment if he failed to comply with the notice of sale provisions of the Uniform Commercial Code?

In considering issue one, the pertinent provision of the Uniform Commercial Code is set forth. Section 87A-9-504, R.C.M. 1947, provides:

> "(1) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. Any sale of goods is subject to the Chapter on Sales (Chapter 2) * * *
>
> "(2) If the security interest secures an indebtedness, the secured party must account to the debtor for any surplus, and, unless otherwise agreed, the debtor is liable for any deficiency. * * *
>
> "(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor * * *." (Emphasis supplied).

The trial transcript reveals that Murphy Auctions is a major auctioneering outlet through which Lynnwood Equipment Company had transacted business on several occasions. The auctions are held three times a year and are preceded by substantial

advertising in the Seattle Times and the Post Intelligence and by a brochure that is sent to prospective purchasers and interested parties. Approximately 350 people attended the auction. Bidding on the equipment varied somewhat from item to item depending upon the interest and the condition of the particular piece of equipment. The mountain logger did receive competitive bidding. William Beaman, an employee of Lynwood Equipment Company, testified he had attended the auction and the price received for the machine was a fair price considering the machine's condition at the time of sale.

When the defendant was confronted with the preceding evidence, he attempted to show the unreasonableness of the sale by introducing evidence indicating a better price could have been received elsewhere, and that the machine could have brought a better price if it had been disassembled and sold for parts. On these two points the Uniform Commercial Code is explicit. Section 87A-9-504(3), R.C.M. 1947, states:

> "(3) * * * Sale or other disposition may be <u>as a unit</u> or in parcels * * *." (Emphasis supplied).

Thus, the Uniform Commercial Code does not require the secured creditor to disassemble the collateral and sell it piece by piece.

> Section 87A-9-507(2), R.C.M. 1947, states:

> "<u>The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner.</u> If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner * * *." (Emphasis supplied).

Thus, the reasonableness of the sale is determined not by the

price that is ultimately received for the collateral, but by the manner in which the sale is conducted.

We have examined the transcript closely and have found no evidence demonstrating the sale was conducted in a commercially unreasonable manner. To the contrary, the transcript is replete with evidence that plaintiff acted in good faith and conducted the sale in a commercially reasonable manner. We so hold.

In considering issue two, we examine the letter sent on October 13, 1970 to determine if plaintiff complied with the notice provision of section 87A-9-504, R.C.M. 1947. During trial plaintiff's credit manager testified he had written the letter and the letter would have been mailed by his secretary in the ordinary course of office procedures. The letter was neither certified nor registered. Defendant denied receiving the letter.

The Uniform Commercial Code does not require the debtor receive actual notice of the sale, it only requires the creditor take reasonable steps to assure that the debtor is notified. Section 87A-1-201(26) R.C.M. 1947, states:

> "(26) A person 'notifies' or 'gives' a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it. * * *" (Emphasis supplied).

In Montana the receipt of a mailing is presumed, if the office procedure of mailing is carried out. However, when the addressee denies receipt, the question is left to the determination of the jury. Treasure State Industries v. Leigland, 151 Mont. 288, 443 P.2d 22; Crissey v. State Highway Comm., 147 Mont. 374, 413 P.2d 308; Renland v. First Nat. Bank of Grass Range, 90 Mont. 424, 4 P.2d 488. Here, the question is not whether the mailing was received but whether it was properly

- 6 -

mailed.

Plaintiff argues that the October 13 notice of time and place of sale was sufficient in all respects, noting that while defendant relied upon the fact the notice misstated the place of sale he continually emphasized he did not receive the notice. Plaintiff further argues that had defendant admitted he received the letter of notice and had offered evidence that he attempted to attend the sale, but was denied the opportunity because of defect of notice, then and only then, would he have been entitled to recover any damage he might have suffered as a result of the defect. Section 87A-9-507(1), R.C.M. 1947.

Such is not the situation here. How can it be argued that defendant was prejudiced by a notice he denies receiving, and therefore could not rely on. To permit defendant to rely on such an issue would be to allow him to avoid an obligation he freely and voluntarily entered into.

Here, in view of the record made during the course of the trial, it is abundantly clear from defendant's own testimony, when considered with conflicting testimony given in his deposition, that he either had a very loose business office operation, or a lack of memory on the answers to the questions asked as to when and if he received various letters, notices and phone calls. His wife did most of his letter writing. She and members of his family pick up the mail, but in answering why he could be sure he had not received the notice of October 13, he said:

> "There is a lot of those I don't remember. But the reason I would have remembered the one telling us the day and date it was to be sold, because my attorney told me I should figure out a way to protect my interest when it was sold, and consequently I would have been prepared to do that. If I had known when."

The record shows and defendant admitted that plaintiff intended to take the equipment to Washington, hoping to find a

- 7 -

better market for its collateral. At least twice before the sale defendant was invited to contact plaintiff if he disagreed with the proposed manner of disposition. Not only did defendant fail to respond, but he assumed from the very day plaintiff took possession, that the equipment would be put up for sale. The record is devoid of any proof by defendant, supported or un-supported, suggesting that the method of sale was commercially unreasonable. Clearly he failed to get past the provisions of section 87A-9-507(2), R.C.M. 1947, and that issue should not have been submitted to the jury.

Plaintiff having acted in good faith and substantially complied with the provisions of the Uniform Commercial Code, and defendant having failed to introduce any contrary evidence, the trial court should either have granted plaintiff's motion for a directed verdict, or his subsequent motion for judgment notwith-standing the verdict.

Judgment is reversed and the cause is remanded with directions to enter judgment for plaintiff-appellant.

_____
                                Justice

We concur:

_____
  Chief Justice

_____

_____

_____
  Justices

- 8 -