**FEDERAL DEPOSIT INSURANCE CORP., as Receiver of PEOPLES BANK OF THE VIRGIN ISLANDS, Plaintiff-Appellee**

v.

**ROAN CREQUE, formerly d/b/a PEOPLES LAUNDROMAT, Defendant-Appellant**

District Court No. 1980/305

District Court of the Virgin Islands

Div. of St. Croix

January 14, 1982

DOUGLAS A. BRADY, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

ROAN CREQUE, St. Thomas, V.I., *pro se*

O'BRIEN, *Judge*

7

## ON APPEAL FROM TERRITORIAL COURT
### OPINION

This appeal from Territorial Court raises the issues (1) whether there was statutory compliance with the requirements of notice to a debtor of the sale of collateral under the Uniform Commercial Code ("UCC") and (2) whether the sale itself was conducted in a commercially reasonable manner. The Territorial Court held that there was compliance with notice requirements and that the sale was conducted in a commercially reasonable manner, and awarded a deficiency judgment to plaintiff-appellee. The Territorial Court decision will be affirmed for reasons set forth in this opinion.

### I. Facts

Appellant, Roan Creque, was the operator of the Peoples Laundromat in St. Croix. To finance purchase of a laundromat, he first borrowed money in 1973 from People's Bank of the Virgin Islands, and then later refinanced the loan in February 1975 to reduce and stretch out the payments. The failure by Mr. Creque to keep up the refinanced payments, which were secured by commercial laundry equipment, resulted in the action in Territorial Court. When it became apparent that he was deeply in default, and with little likelihood of a resolution of his problems, Mr. Creque, with the consent of plaintiff-appellee Federal Deposit Insurance Corporation ("FDIC") as Receiver of People's Bank, sought to find a purchaser of the business and the equipment. While he had discussions with various tentative purchasers, he received one firm offer of $5,000 cash with the prospective buyer to assume the debt herein. That deal fell through because of Mr. Creque's own demand that he be released as a debtor when the new purchaser assumed the debt. After the collapse of that sale, Mr. Creque turned over the keys and the business to FDIC and left St. Croix for San Juan for medical reasons, and eventually moved to St. Thomas.

Meanwhile, the FDIC unsuccessfully tried to solicit individual bids for the collateral so that it could be sold at a private sale. Thereafter, the FDIC decided to sell the collateral publicly and advertised its public sale once a week for four consecutive weeks in the St. Croix Avis newspaper. The Notice of Sale was addressed to "Roan Creque, d/b/a Peoples Laundromat." Armed with an independent appraisal of $8,365.00, the FDIC went forward with the sale held at Peoples Laundromat, before 25–30 interested prospective purchasers. The items offered individually brought a cumulative total bid of

8

$3,591.00. They were then offered on a bulk basis and the highest bid was $4,500.00. The bid was accepted by FDIC, and it then sought a deficiency judgment in the Territorial Court action, together with an award of costs. After trial, the Court entered judgments for $25,276.48 and costs of $1,200.00, or a total of $26,476.48. Mr. Creque, though represented by counsel in the Court below, filed this appeal pro se.

## II. Scope of Review

Mr. Creque assigns two reasons for error by the Territorial Court; he argues that the notice to him of the sale was insufficient for several reasons, and the sale itself was not advertised and conducted in a commercially reasonable manner designed to obtain the best possible price for the equipment.

The Territorial Court, in its lengthy and well-reasoned opinion, made findings of fact that the notice by newspaper advertisement to Mr. Creque, given the circumstances, was sufficient, and further, that the FDIC had advertised and conducted the sale in a "commercially reasonable manner." Based on these findings, among others, the Court concluded as a matter of law that the FDIC was entitled to the deficiency jdugment and costs which were eventually entered in its favor.

Rule 52(a) of the Fed. R. Civ. P. provides that findings by the Court "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." It should be noted that Mr. Creque argued in his brief that the Court's decision was clearly erroneous.

The meaning of "clearly erroneous" was succinctly defined for appellate review in the leading Third Circuit case on the subject. In Krasnov v. Dinan, 465 F.2d 1298, 1302 (3d Cir. 1972), Judge Aldisert, writing for the Court, said:

> It is the responsibility of an Appellate Court to accept the ultimate factual determination of the fact finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data. Unless the reviewing court establishes the existence of either of these factors, it may not alter the facts found by the trial court.

Id. at 1302.

It is on that basis, then, that we review the proceedings below.

9

## III. The Notice to Mr. Creque

■ That Mr. Creque did not receive the notice of the sale by regular or certified mail, or personal delivery, is unquestioned. The only notice to him, if any, the parties agree, was the newspaper advertisement in the St. Croix Avis, addressed to him, but clearly inviting all and sundry purchasers to attend the sale on a given date at a specified place. Mr. Creque argues that this was insufficient. The FDIC counters that it had no knowledge of Mr. Creque's new address, since he left none upon moving from St. Croix to San Juan, for a lengthy hospital stay, and eventually to St. Thomas. At issue here is the interpretation of 11A V.I.C. § 9—504(3) which provides that reasonable notice of the public sale of the equipment "shall be sent by the secured party to the debtor." Also undisputed is the fact that before the sale and his departure from St. Croix, Mr. Creque turned the keys and the business over to the FDIC. The section cited above does not require that the debtor receive *actual* notice of the sale, it only requires that the creditor take reasonable steps to assure that the debtor is notified. James Talcott, Inc. v. Reynolds, 529 P.2d 352, 355 (Mont. 1974).

■ The lower Court found that the FDIC did not have Mr. Creque's forwarding address, and thus the FDIC's use of the newspaper for publication to Mr. Creque of the sale information, at the same time conveying the same information to the public, was reasonable. It cannot be said on appeal that this finding by the Court was "clearly erroneous" under the standard enunciated in Krasnow v. Dinan, 465 F.2d 1298 (3rd Cir. 1972). There was ample evidence from the facts presented to support the decision for notice by publication, and not mail.

■ There is substance, as well, to the FDIC's argument that Mr. Creque waived notice in any event. Mr. Creque's abandonment of the business and the equipment to the FDIC, after refusing an offer of sale, *not* because the price was insufficient, but because he wanted to be clear of the debt, would constitute a waiver of the notice requirement. Nelson v. Monarch Investment Plan of Henderson, Inc., 452 S.W.2d 375 (Ky. 1970). Thus, while any waiver of notice could not be contained in the security agreement itself, as such provision would be violative of 11A V.I.C. § 9—501(3), Mr. Creque by his action could nevertheless be estopped from claiming lack of sufficient notice. Commercial Credit Corp. v. Wollgast, 521 P.2d 1191, 1195 (Wash. 1974). In any case, however, the Territorial Court's

finding that the notice to Mr. Creque was sufficient will not be disturbed.

## IV. Conduct of the Sale

In addition to arguing that the notice to him was insufficient and thereby rendered the sale commercially unreasonable, Mr. Creque also attacks the conduct of the sale itself as being inconsistent with attempts to obtain the best possible price. The Territorial Court found that the notice of sale adequately identified the collateral, described it, and specified the time, place, manner and conditions of sale. This finding was based on evidence of once a week publication for four consecutive weeks in the St. Croix Avis, after obtaining an independent appraisal of the value of the equipment.

■ Section 9—507(2) of the UCC requires more than mere proof that a better price could have been obtained by sale at a different time or in a different method from that selected by the secured party. Having obtained an independent appraisal that the value of the equipment at or near the time of sale was only $8,365.00, the FDIC was not faulted by the Territorial Court for its method of advertisement which was restricted only to the island of St. Croix.

■ The Territorial Court well knew that this was the accepted method in this jurisdiction for offering for sale personal and real property of considerably greater value than the equipment in question. Indeed, the sale drew 25–30 persons, a considerable number for St. Croix. On review, it cannot be said that the Territorial Court's finding in this regard was "clearly erroneous." James Talcott, Inc. v. Reynolds, supra at 4. It is the aggregate of circumstances in each case, rather than the specific details of the sale taken in isolation, that should be emphasized in a review of the sale. The facets of manner, method, time, place and terms cited by the Uniform Commercial Code (Title 11A of the V.I. Code) are to be viewed as necessary and interrelated parts of the whole transaction. In Re Zsa Zsa Limited, 352 F.Supp. 665, 670 (S.D.N.Y. 1972), aff'd without op., 475 F.2d 1393 (2d Cir. 1973).

## Conclusion

The findings of fact of the Territorial Court pertinent to the issues on this appeal were not "clearly erroneous" and the judgments of the Territorial Court of July 31, 1980, and September 23, 1980, will be affirmed.

## ORDER

THIS MATTER having come before the Court on appeal from judgments of the Territorial Court, and the Court having considered the briefs of counsel, and having considered the premises, now therefore, it is

ORDERED:

THAT, the judgments of the Territorial Court dated July 31, 1979, and September 23, 1980, are AFFIRMED.