No. 83-445

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

_____

GEORGE MATTSON, DICK PRUGH AND
JAMES LENON, d/b/a DESIGN CONSTRUCTION,

        Plaintiffs and Respondents,

  -vs-

GORDON JULIAN,

        Defendant and Appellant.

_____

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Joseph B. Gary, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Larry W. Moran, Bozeman, Montana

    For Respondents:

        Gregory O. Morgan, Bozeman, Montana

_____

Submitted on Briefs: December 1, 1983

Decided: March 29, 1984

Filed:    MAR 29 1984

*Ethel M. Harrison*

_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Defendant Gordon Julian appeals from the judgment of the Eighteenth Judicial District Court, Gallatin County, awarding plaintiffs $6,382.33, plus interest, due on a house construction contract. We affirm.

The issues are:

1. Whether evidence of defective performance is admissible under a general denial?

2. Whether there is substantial evidence to support the District Court's determination that cost estimates did not limit the cost-plus payment term of the construction contract?

3. Whether the District Court's finding of an account stated was erroneous?

On June 1, 1978, George Mattson, Dick Prugh and James Lenon, doing business as Design Construction, entered into a contract for the construction of a house for Gordon Julian in Bear Canyon, Gallatin County, Montana. The written contract was a standard form agreement between the owner and the contractor, printed by the American Institute of Architects, with individual provisions filled in by the parties. The contract provided that the contractor would be compensated for services at 15% of the cost of the work. Such a contract is known as a "cost-plus" contract.

Design Construction performed services, supplied materials and submitted statements to Julian on a regular basis from July 10, 1978 to January 5, 1979. Julian made payments of $31,636.90 out of an alleged total of $38,519.23 due under the contract. On December 5, 1978, Design Construction sent Julian a statement and a letter discussing the work that remained to be done. No payment was made on

2

that statement. Another statement was sent on January 5, 1979 and no payment was received. Design Construction contended that there remained an unpaid balance of $6,882.33. Julian moved into the house in early December 1978.

On or about January 29, 1979, plaintiffs and Julian met to review the account. After the meeting, Design Construction sent Julian several statements confirming $6,882.33 as the amount due and on April 17, 1980, a letter was sent reiterating the amount due and demanding payment. On April 30, 1980, Julian paid $500 on the account, reducing the balance to $6,382.33. No further payments were made by Julian. Plaintiffs received no objection to the stated amount due.

Plaintiffs filed their complaint on May 14, 1981. Default was entered on June 5, 1981, but a motion to dismiss was filed by Julian on June 8, 1981 and the District Court allowed the default to be set aside. On July 15, 1981, Julian filed an answer, generally denying the claim of work and services performed pursuant to the contract and generally denying that an account had been stated. The answer contained no specific denial of conditions precedent nor any statement of counterclaim.

The case was heard by the District Court without a jury on January 6 and 17, 1983. At trial Julian presented evidence that some of the work performed by Design Construction was defective. Other evidence established that plaintiffs agreed to meet with Julian on two separate occasions to review alleged defective work, but Julian failed to appear. Also, Design Construction sent a mason to the house to repair alleged defects but the mason was refused entrance to the house. Plaintiffs objected to admission of evidence on claimed defects because Julian had failed to

3

plead defects as a defense as required by the Rules of Civil Procedure. Julian never attempted to amend his pleadings or obtain a continuance. The Court ruled that failure to specifically plead defects barred evidence of defects under the Rules.

The Court found that the total cost of materials and services by Design Construction was $38,519.23, or approximately 10% over the estimated cost of $35,000. The Court found that the $35,000 figure was merely an estimate and that Julian's payment obligation was controlled by the cost-plus agreement. The Court found that Design Construction substantially performed the contract and that the sum of $6,382.33 plus interest was due. Julian appeals.

I

Julian argues that defective workmanship defeats recovery under the contract and that he is entitled to show defects in workmanship under a general denial. He contends that correction of defects was a condition precedent to recovery and that evidence of defects is defensive and need not be pled as a counterclaim. He contends that the District Court has deprived him of his right to present a defense. We disagree.

Whether Julian's evidence of alleged defective performance was intended to support a counterclaim or was merely defensive does not affect the outcome of this issue. In either event, Julian failed to properly plead and his evidence was properly rejected by the District Court.

Julian contends that correction of defects was a condition precedent to recovery by plaintiffs. Section 28-1-403, MCA defines "condition precedent" as "one which is to be performed before some right dependent thereon accrues or some act dependent thereon is performed." Julian's theory

4

was that alleged defective performance and failure to correct by Design Construction precluded accrual of their right to receive payment.

However, Rule 9(c), M.R.Civ.P. provides:

"In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity." (emphasis added)

In Treasure State Industries v. Leigland (1968), 151 Mont. 288, 443 P.2d 22, decided after Montana's adoption of Rule 9(c), we stated:

"The conditions precedent referred to in this rule are those the performance or occurrence of which are prerequisite to a claim upon which relief can be granted. In most instances there is no question of the performance of conditions precedent and Rule 9(c) thus puts the burden on the defendant to raise the issue when there is actually a question. Under this rule a general denial will not put the performance or occurrence of any condition in issue." 151 Mont. at 295-96, 443 P.2d at 26 (emphasis added).

Other authorities are in agreement with the Treasure State Industries rule. 1 Moore's Federal Practice Rules Pamphlet ¶9.3[3] (1984); McKee-Berger-Mansueto v. Board of Education (7th Cir. 1980), 626 F.2d 559.

Plaintiffs alleged in their complaint that the parties executed a construction contract on a cost-plus basis, that plaintiffs had performed work under the contract and that defendant owed plaintiffs $6,382.33. Julian's answer generally denied all allegations in the complaint on the basis of insufficient knowledge. Julian did not plead defective performance or failure to correct. No specific denial of any condition precedent appears in Julian's pleadings. Julian never moved to amend his pleadings or for a continuance despite the lengthy period between the filing of pleadings and trial. Having failed to plead denial of a

5

condition precedent with specificity or particularity, Julian's testimony of alleged defective performance and failure to correct was properly rejected. See Hansen v. Kiernan (1972), 159 Mont. 448, 457, 499 P.2d 787, 791; Interstate Manufacturing Co. v. Interstate Products Co. (1965), 146 Mont. 449, 452, 408 P.2d 478, 480.

The District Court rejected Julian's evidence also because it appeared to be an attempt to raise a counterclaim which had not been plead. Statements made by defense counsel during trial suggested that Julian was seeking recoupment based upon alleged defective performance. In Francisco v. Francisco (1947), 120 Mont. 468, 191 P.2d 317, recoupment was defined:

> "'Recoupment, at common law, is the right of the defendant, in the same action, to cut down the plaintiff's demand either because the plaintiff has not complied with some cross obligation of the contract on which he sues or because he has violated some duty which the law has imposed on him in the making or performance of that contract.'" 120 Mont. at 474, 191 P.2d at 320, quoting 47 Am.Jur. at 708.

Under Rule 13(a), M.R.Civ.P. a counterclaim is any claim, including recoupment or set-off, which one party has against an opposing party. 3 Moore's Federal Practice ¶13.02 (2d ed. 1983). Rule 13(a) requires that a party plead a counterclaim that arises out of the same transaction. Julian did not plead any counterclaim.

Because Julian did not plead or otherwise give notice of his defects theory prior to trial, it was not clear whether he was attempting to prove only failure of a condition precedent or was also seeking recoupment. In either case Julian failed to follow the simple pleading procedures designed to give notice to the opposing party and to narrow the issues for trial. Tabacco River Lumber Co., Inc. v. Yoppe (1978), 176 Mont. 267, 270, 577 P.2d 855, 856; 2A

6

Moore's Federal Practice ¶9.04 (2d ed. 1983). The District Court was correct in refusing to admit evidence of defective performance.

## II

Julian next contends that the District Court erroneously excluded evidence of cost estimates under the parol evidence rule. He contends the cost estimates were incorporated into the contract by reference but that the court nonetheless refused to consider them. We disagree.

The record shows that the District Court in fact considered Julian's evidence of cost estimates but found the estimates were not binding:

> ". . . it was a possible violation of the terms of the agreement which stated that [it] was an estimate of $35,000.00 for the job. However, the estimate was merely an estimate and was not binding and the parties agreed to pay cost plus 15% and that is what was billed." (emphasis added)

Thus, the District Court considered the evidence of cost estimates but was not persuaded by Julian's contention that the estimates limited the cost-plus term of the contract. The District Court's findings will not be disturbed on appeal where they are based on substantial evidence. Marriage of Garst (Mont. 1983), 669 P.2d 1063, 1066, 40 St.Rep. 1526, 1529. The District Court's finding that services were to be billed on a cost-plus basis is supported by substantial evidence.

## III

Finally, Julian contends there is insufficient evidence to support a finding of an account stated. Julian argues the account stated is subject to the contractual defenses of defective performance and failure to correct. Julian's position is without merit.

7

In Johnson v. Tindall (1981), 195 Mont. 165, 635 P.2d 266, we stated that the basic ingredient of an account stated is an agreement that the items of the account and the balance struck are correct and an express or implied agreement for the payment of the balance. Implied agreement for the payment of the balance may be presumed where there is a course of dealings, an antecedent indebtedness, and retention of a statement of the account for an unreasonable length of time without objection. 195 Mont. at 169-70, 635 P.2d at 268. Here, the District Court found an implied agreement of account stated based upon these factors.

The District Court found that plaintiffs sent Julian numerous statements for services and materials from July 10, 1978 to January 5, 1979, totalling $31,636.90. All of these amounts were paid. Additional services were performed by plaintiffs and statements were sent to Julian on December 5, 1978 and January 5, 1979. After Julian failed to pay, plaintiffs and Julian met on January 29, 1979 and discussed the amount due. The next day, plaintiffs sent Julian a letter confirming the amount due as $6,882.33. Other statements and letters were sent reiterating the amount due. No objection to these statements was made by Julian until trial. In fact, Julian made a payment of $500 on the account in April 1980, reducing the balance to $6,382.33. The evidence of alleged defective performance was not before the Court. Substantial evidence supports the District Court's conclusion that there was an account stated.

We affirm the judgment of the District Court.

Justice

8

We concur:

_____
Chief Justice

_____

_____

_____
Justices

9